No. 21-2174

IN THE

# United States Court of Appeals for the Federal Circuit

POP TOP CORP.,

*Plaintiff-Appellant*

*v.*

RAKUTEN KOBO INC.,

*Defendant-Appellee*

Appeal from the United States District Court for the Northern District of California, Case No. 4:20-cv-04482, Magistrate Judge Donna M. Ryu.

## APPELLEE'S MOTION FOR SANCTIONS UNDER FED. R. APP. P. 38

JOSHUA L. RASKIN
JUSTIN A. MACLEAN
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-6930
raskinj@gtlaw.com
macleanj@gtlaw.com

*Counsel for Appellee,*
*Rakuten Kobo Inc.*

May 18, 2022

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

STATEMENT OF FACTS .......................................................................................1

    I.    Summary of District Court Proceedings ..........................................1

    II.   Pop Top's Arguments On Appeal .....................................................8

ARGUMENT .........................................................................................................13

    I.    Legal Standard ..................................................................................13

    II.   Pop Top's Appeal Was Frivolous ....................................................15

    III.   Kobo Should Be Awarded Double Costs and Attorney's Fees ..................20

CONCLUSION ......................................................................................................20

PROOF OF SERVICE ...........................................................................................21

CERTIFICATE OF COMPLIANCE .....................................................................22

# **TABLE OF AUTHORITIES**

**Cases** | **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................16, 17

*Asberry v. U.S. Postal Serv.*,
692 F.2d 1378 (Fed. Cir. 1982) .................................................13

*Carbino v. West*,
168 F.3d 32 (Fed. Cir. 1999) .......................................................9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).....................................................................16

*Finch v. Hughes Aircraft Co.*,
926 F.2d 1574 (Fed. Cir. 1991) ................................13, 14, 17, 19

*Google Inc. v. Beneficial Innovations, Inc.*,
2014 WL 4215402 (E.D. Tex. Aug. 22, 2014).........................18

*Invitrogen Corp. v. Clontech Lab'ys., Inc.*,
429 F.3d 1052 (Fed. Cir. 2005) .................................................19

*Octocom Sys., Inc. v. Houston Comput. Servs., Inc.*,
918 F.2d 937 (Fed. Cir. 1990) ..............................................14, 20

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
948 F.2d 1573 (Fed. Cir. 1991) ........................14, 15, 17, 20

*TechSearch, L.L.C. v. Intel Corp.*,
286 F.3d 1360 (Fed. Cir. 2002) .................................................16

*Walker v. Health Int'l Corp.*,
845 F.3d 1148 (Fed. Cir. 2017) ........................................13, 15, 20

**Statutes**

35 U.S.C. § 285..........................................................................7, 15

**Other Authorities**

Fed. R. App. P. 38......................................................................13

<u>**CERTIFICATE OF INTEREST**</u>

Pursuant to Federal Circuit Rule 47.4, I, Joshua L. Raskin, certify the following:

1.      The full name of the party represented by me is:

**Rakuten Kobo Inc.**

2.      The name of the real party-in-interest (if the party named in the caption is not the real party-in-interest) represented by me is:

**Not applicable.**

3.      All parent corporations or any publicly held corporations that own 10% or more of the stock of appellee:

**Rakuten Kobo Inc. ("Kobo") is a wholly-owned subsidiary of Rakuten USA, Inc., which is a wholly-owned subsidiary of Rakuten Group, Inc., a Japanese corporation that is publicly traded on the Japanese stock exchange. No other publicly held corporation owns 10% or more of Kobo's stock.**

4.      The names of all law firms and the partners or associates that appeared for the party now represented by me in the district court or are expected to appear for the party in this court are:

**GREENBERG TRAURIG, LLP**
**Joshua L. Raskin**
**Nicholas A. Brown**
**Justin A. MacLean**
**Vimal M. Kapadia**
**Kathryn E. Albanese**

5. Case titles and numbers of any cases known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

**Not applicable.**

6.  Information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees):

*Pop Top Corp. v. Rakuten Kobo Inc.*, **No. 22-1688 (Fed. Cir.)**

May 18, 2022                                    /s/ Joshua L. Raskin

# INTRODUCTION

Pursuant to Federal Rules of Appellate Procedure 27 and 38 and Federal Circuit Rules 27 and 47.7, Appellee Rakuten Kobo Inc. ("Kobo") hereby moves for an order determining that Appellant Pop Top Corporation's ("Pop Top") appeal is frivolous, awarding Kobo double its costs and attorney's fees for defending the appeal, and holding Pop Top and its counsel jointly and severally liable for the award.

Pursuant to Fed. Cir. R. 27(a)(2), Kobo's counsel discussed this motion with Pop Top's counsel on May 12, 2022. Pop Top indicated that it opposes the motion.

# STATEMENT OF FACTS

## I. <u>Summary of District Court Proceedings</u>

On July 7, 2020, Pop Top filed its complaint against Kobo alleging that Kobo infringed claim 1 of U.S. Patent No. 7,966,623 ("the '623 patent") by providing an application ("Kobo App") which "facilitates the download of a book to [a] user device[.]" Appx37 at ¶14. The Kobo App "is an eReader software application for reading eBooks that is available across a variety of operating systems." Appx279; Appx423-424 at ¶5. "Kobo provides eBooks through its Kobo Store," which users may purchase in multiple ways. Appx279; Appx424 at ¶6.

The '623 patent contains only one claim, comprising, *inter alia*, the step of "serving [an] internet document from the content server to the client web browser,

*wherein the internet document includes code for invoking a highlighting service* to operate with the internet document[.]" Appx25 at 8:21–53.

From the outset of the litigation, Kobo repeatedly explained to Pop Top's counsel that the Kobo App could not infringe because, among other reasons, even assuming that the eBooks provided by Kobo were "internet documents," those books did not "include[] code for invoking a highlighting service." Appx92-93; Appx95-96; Appx105-106; Appx574; Appx580-581; Appx583. Rather, as Kobo explained, the only code relating in any way to highlighting is found in the Kobo App itself. Appx175-184 at ¶¶15-31, 36, 38; Appx232-235 at ¶¶36-37, 39-49. Further to its correspondence, Kobo provided or made available for inspection two eBooks—one identified in the Complaint and one identified in other Pop Top correspondence—in an attempt to satisfy Pop Top that they did not "include[] code for invoking a highlighting service." Appx105-106; Appx574. While Pop Top changed its position several times throughout the correspondence, Pop Top never identified any code in the eBook "for invoking a highlighting service." Appx10 ¶¶10-11; Appx669-689.

As the absence of the "code for invoking" limitation would be dispositive of the litigation, the parties agreed to early summary judgment briefing, with discovery limited to that needed to oppose Kobo's summary judgment motion. Appx29; Appx84-85; Appx499-504.

On October 21, 2020, Pop Top served its Infringement Contentions under the Northern District of California's Patent Local Rules. Appx300-311. In the claim chart attached to the Infringement Contentions, Pop Top included another infringement theory—that "eBooks served by Kobo that are highlightable include code" in a ".js" file which "invokes the highlighting service." Appx304. However, Pop Top did not identify any "code for invoking a highlighting service" within this file (or any other file within the eBook). *Id.* Instead, Pop Top contended that "[i]n the absence of the code included with the eBook, the highlighting service is non-operative on the eBook," and posed the following question: "Even in a test-case controlled by Rakuten, can Rakuten demonstrate highlighting working with the Kobo app, without any included code?" *Id.*

On November 12, 2020, Kobo moved for summary judgment of non-infringement. *See generally* Appx271-293. Among other things, Kobo asserted that the Kobo eBooks do not include "code for invoking a highlighting service." Appx285-288. Kobo's motion was supported by the Declaration of Trevor Hunter, Kobo's Chief Technology Officer, and the Declaration of Nathaniel Polish, Ph.D., Kobo's technical expert. Appx170-184; Appx221-238. Mr. Hunter described, among other things, the operation of and source code for the Kobo App, Appx175-184 at ¶¶15-31, 36, 38; Appx423-437 at ¶¶4, 9, 37, while Dr. Polish explained, among other things, why the Kobo eBooks do not "include code for invoking a

highlighting service." Appx232-235 at ¶¶36-37, 39-49; Appx456-465 at ¶¶31, 35, 38, 53, 55-60. Further, Mr. Hunter and Dr. Polish described the results of performing the tests suggested by Pop Top to remove the "kobo.js" file from within two separate Kobo eBooks, which demonstrated that highlighting indeed worked perfectly with the Kobo App without the "kobo.js" file. Appx288; Appx436-437 at ¶38; Appx464-465 at ¶59.

Pop Top took no discovery to oppose Kobo's motion—despite having over two months to do so. Rather, in its opposition to the motion, Pop Top argued that "code for invoking a highlighting service" should be given its plain and ordinary meaning, that "the code is *for invocation* and not the code to do the highlighting," and that "Claim 1 speaks of 'code for invoking,' not all code necessary to then and there highlight the internet document." Appx644. Of course, Kobo never argued that the claim required "all code necessary to then and there highlight the internet document"—its consistent argument was that the eBook contained *no code at all* relating to highlighting, including no "code for invoking a highlighting service." Appx287-288; Appx520-521. Nevertheless, Pop Top maintained this misleading argument during the hearing on Kobo's summary judgment motion and, in its decision, the district court correctly dismissed the same, stating that "Pop Top "engage[d] in distraction" and "*blatantly misconstrue[d]* Kobo's position." Appx7-8 (emphasis added).

In addition, Pop Top changed its infringement theory during the course of the summary judgment motion at least two more times. In its opposition brief, Pop Top newly alleged that "[c]ode identifying the eBook as a Reflowable ePub file is 'code for invoking a highlighting service'" Appx647 and provided a "claim chart" purporting to "map" certain statements in *Mr. Hunter's* (Kobo's CTO's) declaration to various limitations of claim 1. Appx646-648. In particular, Pop Top argued that statements in Paragraphs 18 and 19 of the Hunter Declaration provided evidence that the "code for invoking" limitation was met. Appx646. Then, at the hearing on Kobo's motion, Pop Top (again for the first time) orally argued that Mr. Hunter "admit[ted]" that code in the form of "a command is sent from the eBook to the content viewer" in Paragraph 24 of his Declaration—which, of course, Mr. Hunter did not do. Appx9-10 (citing Appx675).

Pop Top did not submit any evidence or expert testimony to support these new arguments. Moreover, Pop Top *still* failed to identify any code in the eBook itself. Rather, the portions of the Hunter Declaration on which Pop Top relied for its new arguments described the code in the Kobo App on the user's device; those paragraphs did *not* describe any code included in the eBook. Appx176-177 at ¶¶18-19; Appx646-647; *see* Appx175 at ¶15; Appx177 at ¶20; Appx424-425 at ¶9b; Appx679-681; Appx687-689. And Kobo's expert opined that the Hunter Declaration (including those portions relied on by Pop Top) demonstrated non-infringement—

i.e., that the "code for invoking" limitation was *not* met. Appx232-235 at ¶¶36-37, 39-51; Appx459-460, 462-465 at ¶¶35, 38, 52-60. At the hearing, the court repeatedly asked Pop Top's counsel to identify the code included in the eBook for invoking a highlighting service. Appx674-675; Appx677-679; Appx683-685; Appx687. Pop Top could not do so.

The district court granted summary judgment to Kobo. As the court noted, "Pop Top did not submit evidence in opposition to [Kobo's] motion, and utterly fail[ed] to raise any dispute of material fact with respect to" the "code for invoking" limitation. Appx6. As for the infringement theories that Pop Top raised for the first time in its opposition brief and at the hearing on Kobo's motion, the district court held that it would not consider them because they were not disclosed in Pop Top's Infringement Contentions. Appx8-10. In any case, as explained above, the court found those newly minted theories to lack merit, because all code in the Hunter Declaration was included on the Kobo App itself, and not on the eBook. Appx8-10.

In sum, the court held that "Pop Top offer[ed] conclusory statements rather than facts to counter Kobo's evidence that eBooks do not 'include[] code for invoking a highlighting service to operate with the internet document,'" and thus "has not satisfied its burden of demonstrating a dispute of fact on whether the Kobo App meets that particular limitation." Appx11.

Following the completion of all briefing related to this appeal, the district court granted Kobo's motion for attorney's fees pursuant to 35 U.S.C. § 285. Declaration of Joshua L. Raskin ("Raskin Decl.") ¶2, Ex. 1 ("Exceptional Case Opinion").[1] In the Exceptional Case Opinion, the court held that Pop Top's repeated failure to identify *any* code in the eBook that meets the "code for invoking" limitation—under any construction—rendered this case exceptional, in that it "demonstrates the unreasonableness of Pop Top's infringement position." *Id.* at 9. Thus, the court concluded that "this case is 'one that stands out from the others' with respect to the objective unreasonableness and substantive weakness of Pop Top's litigating position." *Id.* at 10 (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).[2]

---

[1] Kobo requests that the Court take judicial notice of the existence and contents of this Exceptional Case Opinion. *See, e.g.*, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 857 F.3d 1347, 1350 n.1 (Fed. Cir. 2017) (taking "judicial notice of district court docket entries entered after the filing of the notice of appeal"); *Function Media, LLC v. Google, Inc.*, 708 F.3d 1310, 1316 n.4 (Fed. Cir. 2013) ("It is proper to take judicial notice of a decision from another court or agency at any stage of the proceeding").

[2] The district court's Exceptional Case Opinion ordered Pop Top to pay the fee award by April 27, 2022. However, Pop Top has still not complied with the court's order. Instead, Pop Top has indicated that it does not have funds to pay the district court's fee award while, at the same time, it continues to pursue the equally frivolous appeal of that award (*see*, Case No. 22-1688) as well as district court litigations against other defendants. Raskin Decl. ¶17, Ex. 6.

## II. Pop Top's Arguments On Appeal

Due to its utter failure to provide *any evidence whatsoever* of code on the eBook meeting the "code for invoking" limitation, Pop Top should have known that any appeal would be doomed from the start. Nonetheless, Pop Top filed a notice of appeal on July 23, 2021. (*See* Dkt. 1.)[3]

In its opening brief, Pop Top rehashed the same baseless arguments that the district court properly rejected. In particular, after a "Statement of the Case" that included unconnected quotes from the record (*see* Dkt. 14 at 2-13), Pop Top first argued that the district court erred in failing to construe the "code for invoking" limitation—based on a manufactured "dispute" that "Pop Top asserts that the code for invoking leads to the highlighting functionality," while "Kobo asserts that the code for invoking is the code for highlighting." (*Id.* at 15.) In doing so, as the district court already found at first instance, Pop Top again blatantly mischaracterized Kobo's position (*see* Dkt. 20 at 14-15). Moreover, Pop Top still pointed to no code on the eBook that could meet the "code for invoking" limitation under *any* construction. (Dkt. 14 at 13, 15-16.)

Pop Top then argued that the district court erred in "assigning no weight" to Pop Top's newest infringement theory, again despite this theory being untimely

---

[3] On July 29, Kobo's counsel emailed Pop Top's counsel, putting Pop Top "on notice" that Kobo would file the instant motion if it continued to press the appeal. Raskin Decl. ¶3, Ex. 2.

under the Patent Local Rules (which Pop Top did not attempt to justify, even on appeal) and not being supported by evidence in the record. (*Id.* at 16-18.) Indeed, it was contradicted by the evidence, because any code that Pop Top identified was found on the Kobo App, not on the eBook—a fact already pointed out by the district court. (*Id.* at 13-14, 16-18.)

In its reply brief, Pop Top doubled down on its frivolous arguments. With respect to its supposed claim construction dispute, Pop Top argued that, even though "Kobo would not infringe even if the lower court had construed the term as Pop Top proposed," that "misses the point." (Dkt. 23 at 1-2.) With respect to its argument that the district court failed to weigh Mr. Hunter's supposed "admissions," Pop Top again relied on unsupported attorney argument. (*Id.* at 3-7.) It repeatedly and misleadingly characterized Mr. Hunter's testimony as demonstrating "commands from the eBook to the content viewer" (*id.* at 4-7) when Mr. Hunter did not testify to this; rather, Mr. Hunter testified *only* as to code on the Kobo App itself. Appx175 ¶¶15-35. Again, Pop Top pointed to no code on the eBook that could meet the "code for invoking" limitation under *any* construction.

And while Pop Top argued, for the first time in its reply, that the district court "abused its discretion when it excluded Pop Top's reliance on Mr. Hunter's admissions" (Dkt. 23 at 6), Pop Top could and should have made that argument in its opening brief. *See Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) ("[I]ssues

initially raised in a reply brief should not be entertained" (collecting cases)). In any case, Pop Top's argument is, again, meritless. The district court acted well within its discretion to refuse to consider its belated theories—which, in any event, were unsupported by evidence.

On May 3, 2022, the Court heard oral argument, and Pop Top fared no better. Pop Top focused on the district court's failure to resolve an alleged claim construction dispute. *See* Oral Argument at 0:11-16:02, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-2174_05032022.mp3 ("Oral Arg."). But Pop Top could not coherently answer the Court's questions about what its proposed construction ("code that leads to highlighting") even means, or why the construction matters. *Id.* at 0:51-4:25, 7:17-8:04. Pop Top argued that Kobo had presented "extrinsic evidence" that the construction of "code for invoking a highlighting service" must be "executable code," *id.* at 3:24-4:25, 5:21-6:00, 6:41-7:17—when Kobo made no such arguments. Pop Top again mischaracterized Kobo's claim construction position before the district court as follows:

> That's a reflection of the position that Kobo took which is that the highlighting functionality must be in the eBook that's served and for that position we would cite 287, the summary judgment brief; 184, Mr. Hunter's testimony; and 237, the technical expert's testimony. All those three cites reference the functionality needing to be served with the eBook and that the eBook doesn't contain highlighting functionality and *so the passage from Pop Top's brief that was just read by the Court references Kobo's position that then and there all code must be necessary to highlight the document*. Those are the terms that Kobo was

10

using in their summary judgment motion. So, but, it points out the dispute that the parties had.

*Id.* at 14:50-16:00 (emphasis added). Again, that was never Kobo's position. Pop Top "blatantly misconstrue[d] Kobo's position," just as it did before the district court. Appx8.

When asked what "particular documents" or "expert testimony" Pop Top had "for why it is that the accused device meets this limitation," Pop Top referred to a "voluntary claim chart" and "infringement contentions." Oral Arg. at 8:04-8:31, 8:50-9:20, 10:23-10:50. Pop Top argued that it relied "on this user interface object which the patent refers to as a highlight button," and that the "Kobo eBook is served with data that facilitates a command based on user interaction with the eBook." *Id.* at 8:31-9:35. But Pop Top never identified any code, data, or anything else *on the eBook* having anything to do with that interaction. Rather, Pop Top pointed to statements in Mr. Hunter's declaration discussing code *on the App*. *Id.* at 9:35-10:24, 26:8-27:59.

During additional rebuttal time granted to Pop Top, the Court repeatedly asked counsel to identify the specific code, *in the internet document* (i.e., the eBook), that Pop Top contended met the "code for invoking" limitation—much like the district court, during the hearing on Kobo's motion for summary judgment, repeatedly asked counsel to identify that code in the eBook. Pop Top could not do

so, instead pointing repeatedly to statements in Mr. Hunter's declaration that *clearly*

described code on the Kobo App:

> Q. But you had an obligation to point to what the code was for infringement purposes. So what is the code? What is the code that's in the internet document that you claim invokes the highlighting service?
>
> A. The code, your Honor, in the infringement contentions is what leads to—
>
> Q. What is the code? The specific code? Tell me what it is? Where is it? Where can I find it? Where have you alleged it?
>
> A. In the public information when the user interacts with the eBook, it triggers a display of the highlighting tools. That evidence is confirmed by the Hunter testimony. And we point to page 179 of the appendix—
>
> Q. But that was just explained, and reading that in total, it's very clear that what that's referring to is not code that's on the eBook but rather code that's on the App. So what else do you have besides A179?
>
> A. Well 177 and 78 Mr. Hunter testifies that based on user interaction, that highlight command is issued. And so this goes to the point that—
>
> Q. But even if it's the user interaction, it's with the eBook running on the App.
>
> A. But… the eBook is served to the App with something that leads to the highlighting. And for code that—
>
> Q. What is that?
>
> A. It's code that—
>
> Q. No no, I mean, where in the record will I see what you've identified that as?
>
> A. A combination of Mr. Hunter's testimony, paragraphs 20 and 21, user interaction, paragraph 24, issue the highlight command to the

content viewer. That together is code for invoking a highlighting service.

Oral Arg. at 26:8-27:59.

On May 4, 2022, the Court affirmed the district court's grant of summary judgment pursuant to Fed. Cir. R. 36(a). This motion is filed within thirty (30) days of this Court's judgment and is thus timely under Fed. Cir. R. 47.7.

## ARGUMENT

### I. <u>Legal Standard</u>

Rule 38 of the Federal Rules of Appellate Procedure provides: "If a court of appeals determines that an appeal is frivolous, it may . . . award just damages and single or double costs to the appellee." Since the inception of the Federal Circuit, "[t]he filing of and proceeding with clearly frivolous appeals [has] constitute[d] an unnecessary and unjustifiable burden on already overcrowded courts, diminishe[d] the opportunity for careful, unpressured consideration of nonfrivolous appeals, and delay[ed] access to the courts of persons with truly deserving causes." *Asberry v. U.S. Postal Serv.*, 692 F.2d 1378, 1382 (Fed. Cir. 1982). "A frivolous appeal imposes costs not only upon the party forced to defend it, but also upon the public whose taxes supporting this court and its staff are wasted on frivolous appeals." *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1578 (Fed. Cir. 1991). Accordingly, the Federal Circuit has a "longstanding policy of enforcing Rule 38 vigorously[.]" *Walker v. Health Int'l Corp.*, 845 F.3d 1148, 1157 (Fed. Cir. 2017).

There are two ways in which an appeal may be frivolous. "First, where an appeal is taken in a case where 'the judgment by the tribunal below was so plainly correct and the legal authority contrary to appellant's position so clear that there really is no appealable issue,' the appeal is held to be 'frivolous as filed.'" *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1578 (Fed. Cir. 1991) (quoting *Finch*, 926 F.2d at 1579-80). "Second, even in cases in which genuinely appealable issues may exist, so that the taking of an appeal is not frivolous, the appellant's misconduct in arguing the appeal may be such as to justify holding the appeal to be 'frivolous as argued.'" *Id.* (quoting *Romala Corp. v. United States*, 927 F.2d 1219, 1222 (Fed. Cir. 1991)). "An appeal that is frivolous as filed, in the sense that no non-frivolous arguments could be made to support it, logically must also be frivolous as argued, since any arguments made are, by definition, frivolous." *Finch*, 926 F.2d at 1580.

If the Court finds an appeal frivolous, it may order single or double costs and "just damages," which have been held to include attorney's fees. *Mor-Flo*, 948 F.2d at 1581 (citing *Sun-Tek Indus. v. Kennedy Sky-Lites, Inc.*, 865 F.2d 1254, 1255 (Fed. Cir. 1989)); *see also Octocom Sys., Inc. v. Houston Comput. Servs., Inc.*, 918 F.2d 937, 944 (Fed. Cir. 1990) (collecting cases). If the conclusion of frivolousness "rests not only on the filing of the appeal but also on the frivolous nature of the advocacy in support of it," the "attorney who wrote and signed the briefs [is] equally

responsible," and thus is held "jointly and severally liable" with its client for payment of the sanction. *Mor-Flo*, 948 F.2d at 1582; *see also Walker*, 845 F.3d at 1157 (same).

## II.    Pop Top's Appeal Was Frivolous

Pop Top's appeal was both frivolous as filed *and* as argued.

As to the appeal's filing, Pop Top submitted *no evidence whatsoever* to the district court that the eBook included "code for invoking a highlighting a highlighting service," and thus utterly failed to meet its burden under Fed. R. Civ. P. 56 to oppose summary judgment. As the district court held in awarding Kobo its attorney's fees under 35 U.S.C. § 285:

> Pop Top has never identified any "code for invoking the highlighting service" on the eBook—not in response to Kobo's numerous requests to do so after it filed this lawsuit, not in its summary judgment briefing, not in response to the court's questioning at the hearing on the motion for summary judgment, and not in its briefing on the current motion [for fees]. . . . Simply put, whether "code for invoking" should be construed as code that "lead[s] to the invocation of the highlighting service" or code "that leads to highlighting based on user interaction with the eBook," Pop Top still does not identify any specific code within the eBook. Pop Top had ample opportunity to examine Kobo's eBooks including the embedded source code. Pop Top's failure to offer any evidence that the "code for invoking" limitation is present in Kobo's eBooks under any theory, or to conduct any discovery regarding the same demonstrates the unreasonableness of Pop Top's infringement position.

Exceptional Case Opinion at 9.

Having not identified any evidence to support its position that the "code for invoking" limitation was met in the district court, Pop Top had no reasonable basis to believe this Court would reverse based on the developed record. Reversal of the district court's judgment would have required this Court to ignore decades-old precedent from the Supreme Court, and its own precedent. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("[T]he nonmoving party [must] go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." (quotation marks omitted)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment" (emphasis in original)); *id.* at 249-50 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (internal citations omitted)); *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) ("[T]he party opposing the motion for summary judgment of noninfringment must point to an evidentiary conflict created on the record, at least by a counter-statement of a fact set forth in detail in an affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient.").

Because "the judgment by the tribunal below was so plainly correct and the legal authority contrary to appellant's position so clear that there really is no appealable issue," Pop Top's appeal is "frivolous as filed.'" *Mor-Flo.*, 948 F.2d at 1578.

Pop Top's appeal was also "frivolous as argued," at least because Pop Top made arguments in support of a frivolously filed appeal. *See Finch*, 926 F.2d at 1580 ("An appeal that is frivolous as filed . . . logically must also be frivolous as argued"). In addition, in its briefs and at oral argument, Pop Top advanced specific arguments that were especially baseless, rehashing the same meritless arguments that were soundly rejected by the district court. In its opening brief, Pop Top "blatantly misconstrue[d] Kobo's position," just as it did before the district court. Appx8. Specifically, Pop Top argued that the district court failed to resolve an alleged dispute as to the construction of the "code for invoking" phrase (Dkt. 14 at 15-16)— even though no such dispute existed, and Pop Top provided no *evidence* that Kobo's eBooks met the "code for invoking" limitation *even under its preferred construction*. When Kobo pointed out this fact (Dkt. 20 at 13-15), Pop Top dismissed Kobo as "miss[ing] the point." (Dkt. 23 at 1-2.) But the fact that claim construction was unnecessary *was* the point. Pop Top could not have prevailed without "sufficient evidence favoring the nonmoving party" to oppose summary judgment. *Anderson*,

477 U.S. at 249-50. By invoking a phantom dispute about claim construction, Pop Top "engage[d] in distraction," much as it did in the district court. Appx7-8.

Moreover, Pop Top continued to argue that the district court erred by "failing to assign any weight to Pop Top's [belatedly] disclosed infringement theory" based on alleged "admissions" of Kobo's CTO. (Dkt. 14 at 16-18; Dkt. 23 at 3-7.) Again, Pop Top pointed to no *evidence* in the record to support this theory. At oral argument, when asked what evidence Pop Top had to show that the "code for invoking" limitation was met, Pop Top's counsel pointed to a "voluntary claim chart" and "infringement contentions," Oral Arg. at 8:04-8:31, and adamantly insisted that this was "not attorney argument." *Id.* at 10:23-10:50. But, of course, attorney argument was all that Pop Top's counsel could advance. Contentions are not evidence. *See, e.g.*, *Google Inc. v. Beneficial Innovations, Inc.*, 2014 WL 4215402, at *4 (E.D. Tex. Aug. 22, 2014) ("In a patent infringement case, a plaintiff cannot prove infringement based on contentions alone, and must proffer sufficient evidence supporting the allegations set forth in the infringement contentions.") (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1369 (Fed. Cir. 2006)). And, while Mr. Hunter, Kobo's CTO, submitted a declaration stating, as a factual matter, how the Kobo App worked, the notion that Mr. Hunter's statements met the "code for invoking" limitation was supported solely by Pop Top's counsel's say-so. There was no expert testimony, or any other *evidence* (rather than argument), that anything in

Mr. Hunter's declaration met the "code for invoking" limitation. *See Invitrogen Corp. v. Clontech Lab'ys., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005) ("Unsubstantiated attorney argument regarding the meaning of technical evidence is no substitute for competent, substantiated expert testimony. It does not, and cannot, support [a party's] burden on summary judgment."). Despite repeated questioning by the Court—the same questions posed by the district court months earlier, *see* Appx674-675; Appx677-679; Appx683-685; Appx687—the only code that Pop Top could identify as "invoking [the] highlighting service" was located on the App. Oral Arg. at 25:33-27:59.

Thus, in its briefing and argument here, Pop Top "submitt[ed] rambling briefs that make no attempt to address the elements requisite to obtaining reversal," "s[ought] to relitigate issues already adjudicated," "fail[ed] to explain how the lower tribunal erred or to present clear or cogent arguments for overturning the decision below," and "misrepresent[ed] facts or law to the court" by "rel[ying] on attorney argument and unsworn fact statements as though they were evidence"—all hallmarks of frivolity. *Finch*, 926 F.2d at 1579 (collecting cases).

For all of the foregoing reasons, Pop Top's appeal was frivolous as filed *and* as argued.

**III.** **Kobo Should Be Awarded Double Costs and Attorney's Fees**

Kobo should be awarded double costs, as well as its attorney's fees as "just damages" for having to litigate this baseless appeal. *Mor-Flo*, 948 F.2d at 1581; *Octocom Sys.*, 918 F.2d at 944. As set forth in its Bill of Costs, Kobo's permitted taxable costs come to $263.04. Kobo has also incurred non-taxable costs of $5,291.13 and attorney's fees of $129,856.12 to litigate this appeal, including $53,216.19 to prepare this motion. *See* Raskin Decl. ¶¶4-9. As demonstrated by the Raskin Declaration, the hours worked and fees billed to Kobo were reasonable. *See id.* ¶¶10-16. In any event, the Court may rely on its "experience in determining what are reasonable hours and reasonable fees for the work lawyers perform" to uphold Kobo's fee request. *Walker*, 845 F.3d at 1157 (quoting *Mor-Flo*, 948 F.2d at 1582).

## CONCLUSION

For the foregoing reasons, Kobo respectfully requests that the Court deem Pop Top's appeal to be frivolous, sanction Pop Top and its counsel jointly and severally, and award Kobo double costs and Kobo's attorney's fees for litigating this appeal.

Dated: May 18, 2022

Respectfully submitted,

/s/ *Joshua L. Raskin*
Joshua L. Raskin
Justin A. MacLean
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017

(212) 801-6930
(212) 801-3137
raskinj@gtlaw.com
macleanj@gtlaw.com

*Counsel for Appellee, Rakuten Kobo Inc.*

## PROOF OF SERVICE

I hereby certify that on May 18, 2022, a true and correct copy of the foregoing

**APPELLEE'S MOTION FOR SANCTIONS UNDER FED. R. APP. P. 38** was

timely filed with the Clerk of Court using the appellate CM/ECF system, which will

send notifications to all counsel registered to receive electronic notices.

/s/ *Joshua L. Raskin*
Joshua L. Raskin
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-6930
raskinj@gtlaw.com

*Counsel for Appellee, Rakuten Kobo Inc.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 27(d)(2) and Federal Circuit Rule 32(g)(1), I certify that the foregoing **BRIEF FOR APPELLEE RAKUTEN KOBO INC.** is proportionally spaced, in a typeface of 14 points or more, and contains 4,872 words, exclusive of those materials not required to be counted under Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f).

/s/ Joshua L. Raskin
Joshua L. Raskin
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-6930
raskinj@gtlaw.com
macleanj@gtlaw.com

*Counsel for Appellee, Rakuten Kobo Inc.*