No. 21-2174

IN THE

# United States Court of Appeals for the Federal Circuit

POP TOP CORP.,

*Plaintiff-Appellant*

*v.*

RAKUTEN KOBO INC.,

*Defendant-Appellee*

Appeal from the United States District Court for the Northern District of California, Case No. 4:20-cv-04482, Magistrate Judge Donna M. Ryu.

**DECLARATION OF JOSHUA L. RASKIN IN SUPPORT OF APPELLEE'S MOTION FOR SANCTIONS UNDER FED. R. APP. P. 38**

JOSHUA L. RASKIN
JUSTIN A. MACLEAN
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-6930
raskinj@gtlaw.com
macleanj@gtlaw.com

*Counsel for Appellee,*
*Rakuten Kobo Inc.*

May 18, 2022

I, Joshua L. Raskin, hereby declare as follows:

1.      I am an attorney at law duly licensed to practice law in the State of New York and before the United States Court of Appeals for the Federal Circuit, and am a shareholder of the law firm of Greenberg Traurig, LLP ("GT"), attorneys of record for Rakuten Kobo Inc. ("Kobo") in the above-entitled action (the "Action"). I make this declaration in support of Kobo's Motion for Sanctions Under Fed. R. App. P. 38 ("Motion"). Unless otherwise stated, I have personal knowledge of the facts set forth in this declaration, and if called as a witness, could and would competently testify as set forth below.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of the Order on Defendant's Motion for Attorneys' Fees and Costs, dated January 28, 2022, in *Pop Top Corp. v. Rakuten Kobo Inc.*, 20-cv-04482 (N.D. Cal.).

3.      Attached hereto as **Exhibit 2** is a true and correct copy of an email I sent to Pop Top Corp.'s ("Pop Top") counsel on July 29, 2021.

4.      In its Motion, Kobo seeks an award of double costs and "just damages" incurred as a result of needing to litigate this appeal, including $5,291.13 in non-taxable costs and $129,856.12 in attorney's fees, as further detailed below.

5.      As reflected on Kobo's Bill of Costs, filed contemporaneously herewith, the amount of taxable costs comes to $263.04. However, the actual cost to prepare Kobo's opposition brief and the non-confidential and confidential

appendices and deliver them to the Court came to $4,855.17, which exceeded the amount of taxable costs by $4,592.13. In addition, Kobo was forced to incur non-taxable travel expenses in the amount of $699.00 for me to travel to Washington, D.C. to argue this appeal. A copy of the invoice for the travel expenses incurred is attached hereto as **Exhibit 3**.

6. Work performed for Kobo by GT related to the present appeal occurred over the past ten months and was performed primarily by four individuals. Greenberg Traurig attorneys and other billing personnel are required to record their daily time, together with a description of daily work performed, and enter these amounts and descriptions into a software database maintained by Greenberg Traurig's accounting department. These procedures were followed in connection with the work performed by Greenberg Traurig in this matter for Kobo. I relied on relevant data from this database in preparing this declaration.

7. The following chart identifies the attorneys at GT who worked on the present appeal through May 3, 2022, their hourly rates as charged to Kobo (representing a 15% discount off their standard hourly rates), the number of hours each attorney billed related to the appeal, and the total value of each attorney's appeal-related work.

| Name/Position | Experience | Hourly Rate | Hours | $ Value |
|---|---|---|---|---|
| Joshua Raskin Shareholder | 26 years | $913.75 (2021) | 7.7 | $7,035.88 |
| | | $977.50 | 40.6 | $39,686.50 |

3

| Name/Position | Experience | Hourly Rate | Hours | $ Value |
|---|---|---|---|---|
| | | (2022) | | |
| Justin MacLean Shareholder | 14 years | $646.00 (2021) | 26.5 | $17,119.00 |
| | | $684.25 (2022) | 3.4 | $2,236.45 |
| Vimal Kapadia Of Counsel | 10 years | $624.75 (2022) | 1.2 | $749.70 |
| Katie Albanese Junior Associate | 3 years | $471.75 (2021) | 20.80 | $9,812.40 |
| | | $505.75 (2022) | 7.40 | $3,742.55 |
| **Total** | | | **107.6** | **$76,639.93** |

8.     In addition, Kobo seeks the attorney's fees incurred in filing the present Motion. The following chart contains the same information for the work performed through May 17, 2023, relating to the Motion.

| Name/Position | Experience | Hourly Rate | Hours | $ Value |
|---|---|---|---|---|
| Joshua Raskin Shareholder | 26 years | $977.50 (2022) | 4.2 | $4,105.50 |
| Justin MacLean Shareholder | 14 years | $684.25 (2022) | 31.3 | $21,417.04 |
| Danielle Zapata Junior Associate | <1 year | $497.25 (2022) | 20.5 | $10,193.65 |
| **Total** | | | **56.0** | **$35,716.19** |

9.     In addition to the amounts above, I anticipate additional fees in the amount of $17,500.00 for finalizing this Motion and preparing any reply in support thereof. This estimate is based on my knowledge of the work required to prepare this Motion and the actual work performed in moving for attorney's fees in the district court, which presented similar issues. This work would be performed by myself, Mr.

MacLean, and Mrs. Zapata, at the same 2022 rates and in roughly the same proportions as described above. Accordingly, the anticipated amount of attorney's fees incurred in connection with the present Motion comes to $53,216.19.

10. Descriptions of the experience and background of the attorneys listed above are provided in the biographies attached hereto as **Exhibit 4**.

11. The hourly rates charged by GT related to this appeal are reasonable. GT attorneys have successfully represented clients in complex intellectual property litigation throughout the district courts and the Court of Appeals for the Federal Circuit. Since 2018, GT's IP litigation group has been recognized as a "National Tier 1" law firm for intellectual property litigation, patent law and litigation, copyright law, trademark law, and information technology law by U.S. News. *See* https://bestlawfirms.usnews.com/profile/greenberg-traurig-llp/rankings/8794 (last accessed May 13, 2022).

12. GT's rates in this case are in line with the prevailing rates charged by attorneys at comparable firms with comparable experience in the Northern District of California, from which this appeal was taken, for similar work. Additionally, survey evidence, including the PricewaterhouseCoopers ("PwC") 2020 Revenue Management Report[1], also establishes Greenberg Traurig's rates as reasonable.

---

[1] This report was prepared for Greenberg Traurig subject to restrictions on third-party distribution. Thus, the relevant portions of the report are quoted in this declaration but are not reproduced as an exhibit hereto.

According to this report, the median national rates for intellectual property litigation attorneys are as follows:

- Equity Partner: $1,103 per hour

- Non-Equity Partner: $954 per hour

- Senior Associate (Law Class Year 2012): $868 per hour

- Junior Associate (Law Class Year 2019): $528 per hour

GT's average hourly rates were below average for each of these levels.

13. The American Intellectual Property Law Association's 2019 Report of the Economic Survey ("AIPLA survey") also establishes GT's rates as reasonable. According to the survey, the average hourly rate for intellectual property litigation equity partners in New York is between $365-$964 per hour. Further, the average hourly rate for intellectual property litigation equity partners in San Francisco is between $385-$1,023 per hour. While the AIPLA survey does not list average associate hourly rates for New York and San Francisco, the survey states that the hourly rate for an intellectual property partner-track attorney is between $280-$755 for attorneys with 10-14 years of experience and between $250-$600 for attorneys with less than 5 years of experience. A true and correct copy of a relevant excerpt from the 2019 AIPLA survey is attached hereto as **Exhibit 5**.

14. In addition, the number of hours spent by GT attorneys working on the appeal is reasonable. The amounts listed in the chart in Paragraph 7 above were the

amounts actually billed to Kobo. Similarly, the amounts listed in the chart in Paragraph 8 reflect amounts expected to be actually billed to Kobo. I review all invoices before they are sent to ensure that the time charged accurately reflects the work performed and that the work was performed by persons at the appropriate level (i.e., that shareholders performed shareholder-level work, rather than work that could be performed by associates, and that associates performed associate-level work, rather than work that could be performed by paralegals).

15. I have also reviewed the invoices and other accounting records for this matter to see whether any deductions beyond the 15% fee discount might be appropriate.

16. In this respect, Kobo is not seeking approximately $350.00 in fees billed by one of our appellate attorneys in GT's Las Vegas office, as well as at least $1,250.00 in fees billed by our paralegals. Finally, Kobo is not seeking costs associated with searching and downloading documents from PACER, Lexis, Westlaw, and similar case law repositories.

17. The district court's Order on Defendant's Motion for Attorneys' Fees and Costs ordered Pop Top to pay the fee award by April 27, 2022. However, Pop Top has still not complied with the Court's order. Instead, Pop Top has indicated that it does not have funds to pay the district court's fee award while, at the same time, it continues to pursue the equally frivolous appeal of that award (*see* Case No.

7

22-1688) as well as district court litigations against other defendants. A true and correct copy of a May 18, 2022 email exchange I had with Pop Top's counsel regarding this issue is attached hereto as **Exhibit 6**.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: May 18, 2022 */s/ Joshua L. Raskin*

Joshua L. Raskin

# Exhibit 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

POP TOP CORP,

Plaintiff,

v.

RAKUTEN KOBO INC.,

Defendant.

Case No. 20-cv-04482-DMR

**ORDER ON DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS**

Re: Dkt. No. 61

Plaintiff Pop Top Corp. ("Pop Top") sued Defendant Rakuten Kobo Inc. ("Kobo") for patent infringement, alleging that the Kobo App, an eReader software application for reading eBooks, infringed U.S. Patent No. 7,966,623 ("the '623 patent"). On June 25, 2021, the court granted summary judgment of non-infringement. [Docket No. 50.] Kobo now moves for an award of attorneys' fees and non-taxable costs under 35 U.S.C. § 285 and the court's inherent authority. It also asks the court to hold Pop Top's counsel personally liable for fees and costs pursuant to 28 U.S.C. § 1927. [Docket No. 61.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is granted in part and denied in part.

I.    **BACKGROUND**

A.    **The '623 Patent**

The '623 patent is titled "Method and Apparatus for Enabling Highlighter Services for Visitors to Web Pages." Compl. Ex. 1 ('623 Patent). In order to address shortcomings in existing methods of saving and sharing content, the '623 patent discloses "[a] method for invoking a highlighting service to operate with a web page." *Id*. at 1:33-2:53, 2:57-58. It explains that "the basic function of the highlighting service is to enable a user to highlight an object (e.g., text, graphical images, or a combination) of the web page such that the highlighted portion(s) can easily

be recalled at a later time and/or shared with other users." *Id*. at 5:21-25.

The '623 patent contains one claim, which sets forth a specific computer-implemented method to provide the ability to highlight an "internet document," and describes a sequence of steps. In relevant part, the method comprises the following:

> at a content server, receiving a request for an internet document from a client web browser; serving the internet document from the content server to the client web browser, *wherein the internet document includes code for invoking a highlighting service to operate with the internet document*, the highlighting service hosted at a highlighting service server which is different than the content server hosting the internet document and the code causing a user interface object for invoking the highlighting service to be displayed by the client web browser in connection with the internet document . . .

'623 Patent at 8:22-33 (emphasis added).

**B.     Litigation History**

Pop Top filed this lawsuit on July 7, 2020 asserting that Kobo infringed claim 1 of the '623 patent via the Kobo App. It alleged that the Kobo App "facilitates the download of a book to the user device, *A Tale of Two Cities*. The book running on the App is an internet document. The book is served to the user device with executable code to invoke a highlighting service" and "[t]he App includes a web portal or tool, which allows the reader of *A Tale of Two Cities* to highlight portions of the text." Compl. ¶ 14.

Shortly after Pop Top filed its complaint, Kobo's counsel began corresponding with Pop Top's counsel regarding the merits of the patent infringement allegations. Kobo disputed several aspects of the Kobo App's alleged infringement of claim 1 of the '623 patent and asked Pop Top to dismiss its complaint. On August 10, 2021, defense counsel explained that even assuming that "the books provided through the Kobo App were 'internet documents'" within the meaning of claim one, the eBooks "are *not* provided with—nor do they include—*any* executable code, let alone 'code for invoking a highlighting service.' Instead, the code for highlighting content in a book is included in the Kobo App itself and is common to all books." [Docket No. 61-1 (Raskin Decl. Jul. 13, 2021) ¶ 4, Ex. 2 (emphasis in original).] In response, Pop Top's counsel disputed the assertion that claim 1 "require[s] 'executable code,'" directly contradicting its own allegation in the complaint that "[t]he book is served to the user device with executable code to invoke a

United States District Court
Northern District of California

2

highlighting service." Raskin Decl. ¶ 5, Ex. 3; Compl. ¶ 14.

Defense counsel sent five more letters and emails to Pop Top's counsel through October 2020, each time disputing that the eBooks provided through the Kobo App contain "code for invoking a highlighting service," among other things. Raskin Decl. ¶¶ 6, 10, 11, 13, 14; Exs. 4, 8, 9, 11, 12. In these communications, Kobo's counsel produced a copy of the complete eBook file, including source code, for the book identified in the complaint, *A Tale of Two Cities*, and made available for Pop Top's inspection the eBook file for *Win Bigly*, a second book that Pop Top's counsel had identified in correspondence. Raskin Decl. ¶¶ 7, 9, 10, Exs. 5, 9, 10. Defense counsel explained that Kobo was providing the eBooks so that Pop Top "and [its] expert can confirm that neither includes any 'code for invoking a highlighting service.'" Raskin Decl. Ex. 8. In response, Pop Top's counsel identified a JavaScript file in *A Tale of Two Cities* as "contain[ing] code to invoke various [unspecified] Kobo services" and stated, "our discovery will focus on Kobo ebooks that are capable of invoking the highlighting service." Raskin Decl. ¶ 10, Ex. 10.[1] Kobo responded that the JavaScript file "does not contain *any* function having *anything* to do with highlighting" and that the JavaScript file instead pertained to functions such as page count, pagination, progress, font size, and night reading. Raskin Decl. ¶ 11, Ex. 11 (emphasis in original).

In preparation for the October 7, 2020 initial case management conference, Kobo requested leave to file an early summary judgment motion of non-infringement. The parties agreed to limit discovery to what was needed by Pop Top to oppose the early summary judgment motion. [Docket No. 21 (Joint CMC Statement) 2, 3.] *See also* Raskin Decl. ¶ 8. They jointly proposed an October 21, 2020 deadline by which Pop Top would serve its Patent Local Rules 3-1 and 3-2 disclosures and document production, as well as a briefing schedule for the motion. Joint CMC Statement 5-6. Under the proposed briefing schedule, Pop Top had over two months in which to file its opposition to the motion for summary judgment. Defense counsel states that the purpose of giving Pop Top an extended opposition period was to accommodate any discovery Pop Top

---

[1] Pop Top never inspected the second book. *Pop Top Corp. v. Rakuten Kobo Inc.*, No. 20-CV-04482-DMR, 2021 WL 2633479, at *4 (N.D. Cal. June 25, 2021).

3

needed to conduct to oppose the motion. Raskin Decl. ¶ 8. At the initial case management conference, the court granted Kobo leave to file an early summary judgment motion of non-infringement and adopted the parties' jointly proposed schedule. [Docket No. 26.]

Kobo timely filed its motion in which it asked the court to grant summary judgment of non-infringement on the ground that four limitations in claim 1 are not found in the Kobo App. It asserted that no claim construction was necessary to evaluate non-infringement. Pop Top opposed the motion. It was "silent on whether the court must construe any claim terms in order to decide the motion," arguing instead that Kobo "made up out of whole cloth" the four purported claim limitations and that there were numerous factual disputes as to the claim requirements. *Pop Top*, 2021 WL 2633479, at *3.

On June 25, 2021, following a hearing, the court granted Kobo's motion for summary judgment on non-infringement, holding that Pop Top "utterly fail[ed]" to show a dispute of material fact on the first limitation, that is, whether the eBooks delivered to the Kobo App "include[ ] code for invoking a highlighting service to operate with the internet document[.]" *Id*. at *4. The court found that "Kobo submitted affirmative unrebutted evidence that its eBooks do not include 'code for invoking a highlighting service'"; that Pop Top had not identified "code for invoking a highlighting service" in the "internet document"; and that its October 2020 infringement contentions were "vague on this point." *Id*. The court noted that Pop Top had "engage[d] in distraction" by mischaracterizing Kobo's argument as requiring that "the served internet document . . . include *all* code necessary to highlight the served internet document." The court held that this "blatantly misconstrue[d] Kobo's position," which was "that the claim requires the internet document to 'include[ ] code for invoking a highlighting service." *Id.* at *5. The court found that the undisputed evidence demonstrated "that the eBooks for the Kobo App do not include any such code." *Id*.

Notably, Pop Top did not submit any evidence in opposition to Kobo's summary judgment motion. Pop Top also admitted that it had conducted no discovery.[2]

---

[2] Pop Top initially argued that the court should deny summary judgment on the ground that Pop Top was "entitled to explore infringement of claim 1 on a complete record after fact and expert

4

The court also rejected Pop Top's attempt to offer two new theories regarding how the eBooks include "code for invoking a highlighting service," neither of which had been disclosed in its infringement contentions.[3] *Id*. at *5-6. Finding that Pop Top had made no effort to show good cause to amend its infringement contentions to disclose the new theories and thus could not rely on them, the court nonetheless concluded that both were meritless. Neither theory raised a material dispute of fact as to whether the Kobo App meets the limitation that "the internet document includes code for invoking a highlighting service to operate with the internet document." *Id*.

The court concluded that Pop Top's failure to identify a dispute of fact regarding the first limitation was fatal to its infringement claim. *Id*. at *6; *see TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002) ("To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system.").

The court entered judgment for Kobo on June 25, 2021. [Docket No. 54.] Kobo filed its motion for attorneys' fees and non-taxable costs 14 days later, on July 9, 2021. The Clerk's Office issued an electronic filing error on July 13, 2021 directing Kobo to re-file its motion because Kobo had not properly noticed the motion for hearing pursuant to the Local Rules. Kobo refiled the motion the same day. [Docket No. 61.] Kobo requests an award of $274,741.43 in attorneys' fees under 28 U.S.C. § 285 and non-taxable expenses of $15,675.00 pursuant to the court's inherent power. It also asks the court to hold Pop Top's counsel jointly liable for Kobo's fees under 28 U.S.C. § 1927. Pop Top opposes. [Docket No. 70.]

## II. LEGAL STANDARD

The Patent Act authorizes courts to award attorneys' fees in patent litigation. It provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 28 U.S.C. § 285. An exceptional case "stands out from others with respect to the substantive

---

discovery," and requested discovery under Rule 56(d). *Pop Top*, 2021 WL 2633479, at *3 n.3. At the hearing, Pop Top withdrew its Rule 56(d) request after admitting that it had not conducted any discovery to date. *Id*.

[3] Pop Top raised one of the new theories in its opposition brief, and the other at the hearing on the motion.

5

strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The determination of whether a case is exceptional is committed to the court's sound discretion, and courts may determine whether a case is "exceptional" by considering the totality of the circumstances. *Id.* Factors courts may consider include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). A party must establish its entitlement to attorneys' fees under section 285 by a preponderance of the evidence. *Id.* at 557.

Courts do not award attorneys' fees "as a penalty for failure to win a patent infringement suit." *Id*. at 548 (quoting *Park–In–Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)). Rather, "[t]he legislative purpose behind § 285 is to prevent a party from suffering a 'gross injustice.'" *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017).

## III.   DISCUSSION

As an initial matter, Pop Top argues that Kobo's motion was untimely under Civil Local Rule 54-5(a) and should be denied on that basis. Rule 54-5(a) provides that motions for awards of attorneys' fees "must be served and filed within 14 days of entry of judgment by the District Court, unless otherwise ordered by the Court . . ." Here, the court entered judgment on June 25, 2021. Any motion for attorneys' fees was due 14 days later on July 9, 2021. As noted above, Kobo filed its motion for attorneys' fees and non-taxable costs on July 9, 2021. However, due to Kobo's failure to select a hearing date on the court's electronic filing system, the Clerk's Office issued a notice of electronic filing error on July 13, 2021 directing Kobo to re-file its motion. Kobo promptly refiled the motion the same day. [Docket No. 61.] Under these circumstances, where Kobo timely filed the motion but was directed to re-file it several days later due to an electronic filing error, the court finds that the motion was timely filed and will consider its merits.

Kobo asks the court for an award of attorneys' fees under 28 U.S.C. § 285 and non-taxable expenses pursuant to the court's inherent power. It also asks the court to hold Pop Top's counsel

United States District Court
Northern District of California

6

jointly liable for Kobo's fees under 28 U.S.C. § 1927.

**A. 28 U.S.C. § 285**

It is undisputed that Kobo is the prevailing party. Kobo offers two independent bases for an award of attorneys' fees pursuant to section 285. It asserts that (1) Pop Top's infringement claim was baseless; and (2) Pop Top litigated the case in an objectively unreasonable manner.

As noted, an exceptional case is one that "stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554. With respect to Kobo's first basis for a fee award, "courts in this district tend to award fees" based on the strength or weakness of a party's litigation position "when a plaintiff persists with a clearly untenable claim, or adduces no evidence in support of its position." *Location Based Servs., LLC v. Niantic, Inc.*, No. 17-cv-04413 NC, 2018 WL 7569160, at *1 (N.D. Cal. Feb. 16, 2018) (collecting cases); *see, e.g., Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066 SI, 2014 WL 3956703, at *14 (N.D. Cal. Aug. 12, 2014) (finding all three infringement theories relied on in litigation "were objectively baseless because none of them took into account the size difference between the accused technology and the claimed invention").

In this case, the record establishes that Pop Top never advanced factual support for its position that the Kobo App infringed claim 1 of the '623 patent. After Pop Top filed the complaint, Kobo almost immediately disputed several aspects of the Kobo App's alleged infringement of claim 1, including the complaint's allegation that the exemplar eBook running on the Kobo App "is served to the user device with executable code to invoke a highlighting service." *See* Compl. ¶ 14. Kobo repeatedly set forth its position and asked Pop Top for evidence supporting its claim that eBooks included such code. It provided Pop Top with a copy of the complete source file for the book identified in the complaint so that Pop Top could confirm that it did not include "code for invoking a highlighting service." It made a second eBook available for inspection after the book was identified by Pop Top's counsel. Instead of providing evidence supporting its infringement claims, Pop Top litigated the case by responding with a series of everchanging infringement positions, including one offered for the first time in its opposition brief

United States District Court
Northern District of California

7

and another at the hearing on Kobo's motion for summary judgment. *See Pop Top*, 2021 WL 2633479, at *5, 6. At the end of the day, Pop Top never offered evidence supporting its claim that the eBooks delivered to the Kobo App include "code for invoking a highlighting service."

In its opposition to this motion, Pop Top rehashes its position that "Kobo's summary judgment argument was based on the false premise that 'code for invoking a highlighting service' is 'code that executes highlighting functionality on the internet document.'" Opp'n 14. Pop Top contends that it "asked the court to construe 'code for invoking' to mean *leads to highlighting*," but that the court never construed the term or any other terms in claim 1. Instead, according to Pop Top, the court adopted Kobo's position "that the eBook must include the code that in fact highlights the eBook." *Id*. at 15, 17, 20 (emphasis added).

To escape liability for fees, Pop Top argues that this is not a situation where it persisted with litigation "notwithstanding a negative claim-construction order" and the case is thus not exceptional. *Id*. at 15 (citing *In re PersonalWeb Techs., LLC et al., Pat. Litig.*, No. 18-MD-02834-BLF, 2020 WL 5910080, at *13 (N.D. Cal. Oct. 6, 2020) (finding that plaintiff's "attempt to work around the Court's claim construction ruling was egregious and exceptional," including directing its expert "to base his infringement opinions on a substitute claim construction preferred by [the plaintiff]" and awarding fees under section 285)).[4] Pop Top claims that it "has remained consistent alleging in good faith that Kobo serves eBooks that include code for invoking the highlighting service." Opp'n 20.

Pop Top once again "engages in distraction" and "blatantly misconstrues" Kobo's position, as well as this court's order granting summary judgment. *See Pop Top*, 2021 WL 2633479, at *5. The court did not construe the claim to mean that the internet document must "include all code necessary to highlight the served internet document." In fact, Kobo did not advance such a construction. Rather, Kobo presented unrebutted evidence that the eBooks for the Kobo App

---

[4] Contrary to Pop Top's position, a "negative claim-construction order" is not required to find that a case is exceptional under section 285. *See Octane Fitness*, 572 U.S. at 554 (explaining that "[t]here is no precise rule or formula for making these determinations" and that courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances.").

8

include no "code for *invoking* a highlighting service." *Id*. (emphasis added).

Pop Top now contends that its position at summary judgment "construed 'code for invoking' as *code that leads to highlighting based on user interaction with the eBook*[.]" Opp'n 13 (emphasis added). This is incorrect. Pop Top never advanced such a construction. Instead, it argued that "[t]he code included in the internet document that the content server in claim 1 serves need only lead to the invocation of the highlighting service."[5] [Docket No. 39-3 at ECF p. 14.] The court applied this language exactly as Pop Top asked it to do, granting summary judgment based on Kobo's undisputed, unrebutted evidence that the eBooks do not contain any "code for invoking a highlighting service." *See Pop Top*, 2021 WL 2633479, at *4-6.

More importantly, Pop Top has never identified any "code for invoking the highlighting service" on the eBook—not in response to Kobo's numerous requests to do so after it filed this lawsuit, not in its summary judgment briefing, not in response to the court's questioning at the hearing on the motion for summary judgment, and not in its briefing on the current motion. *See* Hr'g Tr. at 6, 7, 9, 10, 11, 15, 16 ("You have to point me to code that invokes. But you still haven't pointed to code in the eBook that invokes."), 17 ("Where is the code in the eBook? . . . You haven't yet shown me any code from the eBook."), 19, 31. Simply put, whether "code for invoking" should be construed as code that "lead[s] to the invocation of the highlighting service" or code "that leads to highlighting based on user interaction with the eBook," Pop Top still does not identify any specific code within the eBook. Pop Top had ample opportunity to examine Kobo's eBooks including the embedded source code. Pop Top's failure to offer any evidence that the "code for invoking" limitation is present in Kobo's eBooks under any theory, or to conduct any discovery regarding the same demonstrates the unreasonableness of Pop Top's infringement position. "Failing to develop any evidence to support an infringement position 'stands out from others with respect to the substantive strength of a party's litigating position.'" *IPVX Pat. Holdings, Inc. v. Voxernet LLC*, No. 5:13-CV-01708 HRL, 2014 WL 5795545, at *5 (N.D. Cal.

---

[5] At the hearing, the court noted that Pop Top had not "offer[ed] any claim construction, any response to the potential claim construction of 'highlighting service,' and any argument that claim construction was somehow needed." [Docket No. 49 (Hr'g Tr., May 27, 2021) at 4.] Pop Top did not dispute this and did not propose any constructions in response. *See id*. at 4-8.

9

Nov. 6, 2014) (quoting *Octane Fitness*, 572 U.S. at 554) (finding plaintiff's litigation position on infringement was unreasonable where it presented no evidence that the accused product met a claim limitation at summary judgment and awarding attorneys' fees).

Considering the totality of the circumstances, the court concludes that this case is "one that stands out from the others" with respect to the objective unreasonableness and substantive weakness of Pop Top's litigating position. *Octane Fitness*, 572 U.S. at 554. Accordingly, an award of fees under section 285 on that basis is appropriate.

Kobo's second argument is that Pop Top litigated the case in an objectively unreasonable manner. Courts that have awarded attorneys' fees due to the losing party's unreasonable manner of litigation generally have pointed to egregious behavior. *See Vasudevan Software, Inc. v. Microstrategy, Inc.*, No. 11-cv-06637-RS, 2015 WL 4940635, at *5 (N.D. Cal. Aug. 19, 2015) (collecting cases). "A party that mars the proceedings with multiple bad acts more easily crosses the threshold of exceptionality." *Location Based Servs.*, 2018 WL 7569160, at *1. Kobo argues that Pop Top litigated the case in an unreasonable manner because it "failed to diligently pursue discovery in order to confirm that its infringement theories had merit." Mot. 13-14 (citing *Smart Wearable Techs. Inc. v. Fitbit Inc.*, No. 17-CV-05068-VC, 2018 WL 3201751, at *1 (N.D. Cal. June 27, 2018) (awarding fees under Section 285 for "plainly irresponsible and frivolous" conduct in litigation)).

Courts have treated the failure to pursue discovery as pertinent to examining the substantive strength of a claim and not to whether a party litigated the case in an "objectively unreasonable manner." *See, e.g., Logic Devices, Inc. v. Apple Inc.*, No. C 13-02943 WHA, 2014 WL 6844821, at *4 (N.D. Cal. Dec. 4, 2014) (finding case exceptional "with respect to the substantive strength of [the plaintiff's] litigation position" where it was "unsupported by the record" and the plaintiff "took zero depositions and 'little discovery'"); *IPVX*, 2014 WL 5795545, at *5 (finding plaintiff's substantive positions were unreasonable where it "failed to present any evidence to support" its position at summary judgment). In contrast, "egregious behavior" supporting an award for litigation misconduct "generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings." *Pac. Coast*

*Bldg. Prod., Inc. v. CertainTeed Gypsum, Inc.*, No. 18-CV-00346-LHK, 2021 WL 75755, at \*4 (N.D. Cal. Jan. 7, 2021) (denying request for fees based on purported misrepresentations to the court, USPTO and others that did not rise to the level of "egregious behavior" (quotation marks and citations omitted)); *see also Kilopass*, 2014 WL 3956703, at \*6, 14 (finding plaintiff litigated in an unreasonable manner in part because of "conduct that at times amounted to gamesmanship," including taking a position before the PTO's Board of Patent Appeals and Interferences that "was clearly irreconcilable" with the position it took in court).

Here, Kobo has not shown that Pop Top engaged in "egregious behavior" in litigating this case. Nevertheless, for the reasons discussed above, the court finds that Pop Top's failure to identify evidence supporting its argument or to conduct any discovery during this litigation demonstrates that this case is exceptional due to the substantive weakness of Pop Top's claims and supports an award of fees under section 285 on that basis.

**B.      Pop Top's Counsel's Liability for Fees Under 28 U.S.C. § 1927**

Kobo next asks the court to hold Pop Top and its counsel jointly liable for Kobo's fees under 28 U.S.C. § 1927. Mot. 14-16.

Section 1927 allows a court to order an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously" to personally satisfy "the excess costs, expenses, and attorneys' fees reasonably incurred because of" their conduct. 28 U.S.C. § 1927. The imposition of section 1927 sanctions "must be supported by a finding of subjective bad faith," which "is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996) (quotation marks and citations omitted). "Because the section authorizes sanctions only for the 'multipli[cation of] proceedings,' it applies only to unnecessary filings and tactics once a lawsuit has begun . . . § 1927 cannot be applied to an initial pleading." *Id.*

Kobo contends that counsel should be personally liable for its fees under section 1927, arguing that "[t]his lawsuit should never have been brought" and "should have been dismissed from the outset of the proceedings." Mot. 15. According to Kobo, Pop Top's counsel was given

11

United States District Court
Northern District of California

numerous opportunities to dismiss the suit but responded with "ever-shifting, baseless infringement theories" and ultimately failed to gather evidence to oppose Kobo's motion for summary judgment, forcing Kobo to "needlessly expend time and money." *Id.* However, Kobo provides no evidence demonstrating that after filing the complaint, Pop Top's counsel engaged in "unnecessary filings and tactics" that were made with subjective bad faith. As counsel's actions do not meet the requisite standard under section 1927, the court denies Kobo's motion to hold Pop Top's counsel personally liable for awarding attorneys' fees.

### C. Kobo's Expert Fees

Kobo asks the court to exercise its inherent power in awarding non-taxable expenses of $15,675.00, which is the cost of Kobo's expert witness fees. Mot. 19.

"Section 285 allows a district court to award attorney's fees for exceptional conduct, but the statute has been read to exclude expert witness fees." *Finjan, Inc. v. Juniper Networks, Inc.*, No. C 17-05659 WHA, 2021 WL 3140716, at *3 (N.D. Cal. July 26, 2021) (citing *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 377 (Fed. Cir. 1994)). However, "a district court may invoke its inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." *Takeda Chem. Indus., Ltd. v. Mylan Lab'ys, Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008). "The use of this inherent power is reserved for cases with 'a finding of fraud or abuse of the judicial process,'" *id.* (quoting *Amsted*, 23 F.3d at 378), including "cases involving bad faith that cannot be otherwise reached by rules or statutes." *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). "[N]ot every case that qualifies as exceptional under § 285 will also qualify for sanctions under the court's inherent power." *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012) (citing *Amsted*, 23 F.3d at 378).

Kobo argues that it is entitled to the expert witness fees under the court's inherent power for largely the same reasons that it seeks fees under section 285; namely, that Pop Top proceeded with multiple infringement theories even after receiving a copy of an eBook that "proved that Kobo did not infringe the asserted patent," which forced Kobo to retain an expert witness to disprove the theories. Mot. 19. Use of the court's inherent authority to impose sanctions "is reserved for cases where the district court makes a 'finding of fraud or bad faith whereby the 'very

12

temple of justice has been defiled.'" *MarcTec*, 664 F.3d at 921 (quoting *Amsted*, 23 F.3d at 378 (quoting *Chambers,* 501 U.S. at 46)).  As Kobo has not established fraud or the requisite bad faith, the court "enjoys no discretion to employ inherent powers to impose sanctions" in the form of Kobo's expert witness fees.  *See Amsted*, 23 F.3d at 378.

### D. Amount of Attorneys' Fees

Kobo requests an award of its full fees and submits a declaration in support of the requested amount of $274,721.43.  Raskin Decl. ¶¶ 18-29.  Pop Top did not object to the reasonableness of the hours expended or the requested hourly rates and has therefore waived any challenges to the amount of the fee award.  The court nevertheless must independently assess whether the fee request is reasonable.

Counsel's declaration cites Civil Local Rule 54-5(b)(2), which provides that a motion for attorneys' fees must include a declaration containing "[a] statement of the services rendered by each person for whose services fees are claimed, together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained." *Id*. at ¶ 18.  However, the description of the services rendered by each attorney is so general that the court is unable to determine if the time spent was "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  *See* Raskin Decl. ¶ 22.  For example, the court is unable to analyze whether counsel billed for excessive meetings or administrative tasks or whether there was any duplication of work by the attorneys who worked on the case.  Counsel's declaration provides minimal details about his exercise of billing judgment. *See id*. at ¶¶ 27, 28.  Accordingly, by no later than February 11, 2022, Kobo shall submit an abstract of the contemporary time records along with a supplemental declaration by counsel explaining in detail whether counsel exercised billing judgment with respect to the time records, and if so, how.  *See* Civ. L.R. 54-5(b)(2) (providing that a court may "require production of an abstract of or the contemporary time records for inspection, including in camera inspection" in connection with fee motions).  The court will take the matter of the amount of Kobo's attorneys' fees award under submission upon receipt of the abstract and supplemental declaration.

13

## IV.   CONCLUSION

For the foregoing reasons, Kobo's motion for an award of attorneys' fees and non-taxable costs is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated: January 28, 2022



_____
Donna M. Ryu
United States Magistrate Judge

United States District Court
Northern District of California

# Exhibit 2

| **From:** | Raskin, Joshua L. (Shld-NY-IP-Tech) |
| **To:** | Matt Wawrzyn; tatkins |
| **Cc:** | MacLean, Justin A. (Shld-NY-IP-Tech); Kapadia, Vimal M. (OfCnl-NY-IP-Tech); Albanese, Katie (Assoc-NY-IP-Tech) |
| **Subject:** | Pop Top v. Rakuten Kobo |
| **Date:** | Thursday, July 29, 2021 3:17:32 PM |

Matt and Todd,

We were very surprised to see that you decided to appeal Judge Ryu's decision to the Federal Circuit given, among other things, the ***total absence*** of any evidence of infringement in the record (a fact made clear by Judge Ryu's repeated statements to that effect in her decision). Please be on notice that, if you continue to pursue the appeal, we will be filing a motion to deem the appeal frivolous under FRAP 38 and seek an award of our client's attorneys fees and double costs.

Please let me know if you have any questions or wish to discuss.

Thanks,

Josh

**Joshua L. Raskin**
Shareholder; Vice Chair, Patent Litigation Group
Chair, NY IP & Technology Group

Greenberg Traurig, LLP
MetLife Building | 200 Park Avenue | New York, NY 10166
T 212.801.6930
M 917.747.3351
raskinj@gtlaw.com  |  www.gtlaw.com  |  View GT Biography



# Exhibit 3

| From: | Raskin, Joshua L. (Shld-NY-IP-Tech) |
| --- | --- |
| To: | Badillo, Millie (LSS-NY-IP-Tech) |
| Subject: | Fwd: Amtrak: eTicket and Receipt for Your 05/01/2022 Trip - JOSHUA RASKIN - UPDATED |
| Date: | Tuesday, April 19, 2022 1:58:10 PM |
| Attachments: | Raskin Joshua 202204191355500072.pdf |

Please add to next month's Rakuten Kobo / Pop Top bill. This is my train for the appeal oral argument.

**Joshua L. Raskin**
Shareholder; Vice Chair, Global Patent Litigation Group
Chair, NY IP & Technology Group

Greenberg Traurig, LLP
One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.6930
M +1 917.747.3351
raskinj@gtlaw.com | www.gtlaw.com | View GT Biography


Begin forwarded message:

> **From:** etickets@amtrak.com
> **Date:** April 19, 2022 at 1:57:07 PM EDT
> **To:** "Raskin, Joshua L. (Shld-NY-IP-Tech)" <raskinj@gtlaw.com>
> **Subject: Amtrak: eTicket and Receipt for Your 05/01/2022 Trip - JOSHUA RASKIN - UPDATED**

**\*EXTERNAL TO GT\***

SALES RECEIPT

Purchased: 04/19/2022 10:54 AM PTThank you for your purchase.

1. Retain this receipt for your records.
2. Print the attached eTicket and carry during your trip.

Merchant ID 007421 Massachusetts Ave NWWashington, DC 20001800-USA-RAILAmtrak.com

Reservation Number - 124335Stamford, CT to Washington, DC - Union Station (Round-Trip)APRIL 19, 2022
Billing Information
JOSHUA RASKIN44 SPRINGDALE RDSCARSDALE, NY 10583-
American Express ending in 6004 (Purchase)Authorization Code 207219
Total $699.00
Purchase Summary - Ticket Number 1090742571144

TRAIN 2255: Stamford, CT to Washington, DC - Union Station (Round-Trip)Depart 3:55 PM, Sunday, May 1, 2022
1 ADULT RAIL FARE
$263.00
1 ACELA FIRST CLASS SEAT
$163.00
Car 1 | Seat 11D
Ticket Terms & Conditions CANCELLATION FEE MAY APPLYACELA SERVICE, NO PARTIAL REFUND IF USED ON OTHER SERVICE
Subtotal
$426.00
TRAIN 2164: Washington, DC - Union Station to Stamford, CT (Round-Trip)Depart 11:50 AM, Tuesday, May 3, 2022
1 ADULT RAIL FARE
$110.00
1 ACELA FIRST CLASS SEAT
$163.00
Car 1 | Seat 16A
Ticket Terms & ConditionsNOT VALID ON OTHER DATES/TRAINSRAIL FARE ONLY VALID WHEN TRAVELING ACELA FIRST CLASS
Subtotal
$273.00
Total Charged by Amtrak
$699.00
Passengers
Joshua Raskin
Important Information

- You have a seat assignment in Acela First class. To view or change your seat location, retrieve your reservation on Amtrak.com or in the Amtrak app. Be sure to reprint your eTicket if you change your seat. For more information about seat assignment, visit Amtrak.com/reserved-seating.
- Tickets are non-transferable.
- Changes to your itinerary may affect your fare. Refund and exchange restrictions and penalties for failure to cancel unwanted travel may apply. If your travel plans change, contact us before departure to change your reservation. If you do not board your train, your entire reservation from that point will be canceled. If you board a different train without notifying us, you will have to pay for it separately; the conductor cannot apply the money paid for your prior reservation. For more information please visit Amtrak.com/changes.
- Summary of Terms and Conditions: Ticket valid for carriage or refund (subject to the refund rules of the fare purchased) for twelve months after day of issue unless otherwise specified. Amtrak tickets may only be sold or issued by Amtrak or an authorized travel agent/tour operator. Tickets sold or issued by an unauthorized third party will be voided by Amtrak. This ticket is a contract of carriage which includes specific terms and conditions and a binding arbitration agreement between Amtrak and the ticket holder. The terms and conditions and arbitration agreement are available at Amtrak.com/terms-and-conditions.html. Tickets sold for non-

Amtrak service are subject to the tariffs of the providing carrier.

- Questions? Contact us online at [Amtrak.com/contact](Amtrak.com/contact) or call 1-800-USA-RAIL (1-800-872-7245) or for text telephone (TTY) 1-800-523-6590.



RES# 124335-19APR22

**AMTRAK** eTicket

PRESENT THIS DOCUMENT FOR BOARDING

RESERVATION NUMBER 124335

# STM ► WAS Round-Trip

Stamford, CT

Washington, DC
**Union Station**

MAY 1, 2022

Depart

| TRAIN | ACELA | Stamford, CT To Washington, DC - Union Station 1 Acela First Class Seat **Car 1 \| Seat 11D** | DEPARTS | ARRIVES (Sun May 1) |
|---|---|---|---|---|
| **2255** | May 1, 2022 | | 3:55 PM | 8:04 PM |

Return

| TRAIN | ACELA | Washington, DC - Union Station To Stamford, CT 1 Acela First Class Seat **Car 1 \| Seat 16A** | DEPARTS | ARRIVES (Tue May 3) |
|---|---|---|---|---|
| **2164** | May 3, 2022 | | 11:50 AM | 3:43 PM |

| PASSENGERS (1) | | AMTRAK GUEST REWARDS |
|---|---|---|
| RASKIN, JOSHUA | ADULT | 7080303329 |

**Proper identification is required for all passengers.** This document is valid for only passengers listed. See www.amtrak.com/ID for details.

IMPORTANT INFORMATION

- CANCELLATION FEE MAY APPLY
- ACELA SERVICE, NO PARTIAL REFUND IF USED ON OTHER SERVICE
- NOT VALID ON OTHER DATES/TRAINS
- RAIL FARE ONLY VALID WHEN TRAVELING ACELA FIRST CLASS

- For passenger safety the boarding gate at Washington Union Station will close two minutes prior to train departure time.
- Visit Amtrak.com/coronavirus to learn about Amtrak's enhanced safety and cleaning measures and updated travel information.
- **Facial coverings**: While Amtrak passengers and employees are no longer required to wear masks while on board trains or in stations, masks are welcome and remain an important preventive measure against COVID-19. Anyone needing or choosing to wear one is encouraged to do so.
- **Follow guidance on safe travel:** Do not travel when you are experiencing COVID-19 symptoms or when you meet public health criteria for quarantine. See Amtrak.com/terms-and-conditions for details, and contact us to reschedule or cancel your travel.
- eTickets for Reserved services are valid only for the specific train number, date and accommodation type booked.
- You have a reserved seat in Acela First class. To view or change your seat location, retrieve your reservation on Amtrak.com or in the Amtrak app. Be sure to reprint your eTicket if you change your seat. For more information about reserved seating, visit Amtrak.com/reserved-seating.
- Customers are encouraged to arrive at the station 30 minutes before departure or 60 minutes if in need of ticketing and/or baggage assistance, or if you're boarding at a Canadian station. Check the recommended arrival times for your departure station at Amtrak.com/stations.
- Tickets are non-transferable. They are valid only for the personal use of the passenger(s) named on the ticket.

- If you change your booking but do not reprint your eTicket, it will not reflect your current itinerary. Your eTicket is automatically updated in the Amtrak mobile app, and you can view an updated copy on Amtrak.com. At some stations, a gate agent may need to view your eTicket prior to boarding. Learn more at Amtrak.com/boarding.
- Changes to your itinerary may result in an increase to your fare, and may result in fees or forfeiture of value. Learn more at Amtrak.com/changes.
- Carry-on baggage is limited to 2 personal items under 14x11x7 inches & 25 lbs. per item, and 2 bags under 28x22x14 inches & 50 lbs. per bag, per passenger. You may be charged a baggage fee or denied boarding if your items exceed these limitations. Learn more at Amtrak.com/baggage.
- At most stations where checked baggage service is available, baggage check-in normally must be completed by 45 minutes prior to departure, unless a different time limit applies to your specific station and/or train. Learn more at Amtrak.com/checked-baggage.
- Check the departure board or ask a uniformed Amtrak employee employee to find your boarding location.
- **If You See Something Say Something. Contact Amtrak Police at 1-800-331-0008 or text to APD11 (27311).**

# Exhibit 4

GT | GreenbergTraurig



# Joshua L. Raskin

SHAREHOLDER

raskinj@gtlaw.com

**NEW YORK**
One Vanderbilt Avenue
New York, NY 10017
+1 212.801.6930

## Intellectual Property & Technology | Intellectual Property Litigation

Joshua L. Raskin is Vice Chair of the firm's Patent Litigation Group and Chair of the New York Intellectual Property & Technology Group. Listed by Patexia as the 42nd most active patent litigation attorney in 2022 (out of 14,685 attorneys), Josh's primary focus is on patent litigation, although he has wide-ranging experience in all areas of IP. He has litigated countless cases in federal courts across the country and has argued numerous times before the Courts of Appeals for the Federal and Second Circuits. He has represented clients at the trial and appellate stages in a broad range of industries, including electronics, computer technology, mobile handsets, medical devices and products, and finance.

His experience is broad and varied having represented both defendants and plaintiffs. Prior to joining the firm, Josh was the head of the patent litigation practice at a prominent New York plaintiffs' firm where he oversaw numerous complex patent cases. Before that, Josh was a partner and co-head of the patent litigation practice at a national firm where he represented both plaintiffs and defendants in cases involving all areas of intellectual property, including patents, trademarks and copyrights.

Josh also has deep experience with *inter partes* review proceedings, including representing companies such as Samsung, B. Braun Medical, and Stingray Digital Group. Outside of the new post-grant review processes, Josh has also worked on numerous U.S. patent reexaminations (both *inter partes* and *ex parte*).

## Concentrations

- Patent infringement

- Post-issuance patent proceedings, including *inter partes* review, post-grant review and *ex parte* reexaminations

- Intellectual property counseling, licensing, due diligence and opinions

- Trademark infringement

## Experience

**Internet/Software/Electrical**

- *Chewy, Inc. v. International Business Machines Corporation,* 1-21-CV-01319 (S.D.N.Y.). Lead counsel in a declaratory judgment action against IBM relating to web and mobile technologies. Succeeded in

obtaining a complete victory for client Chewy, including judgments of non-infringement on three patents and judgments of invalidity on two other patents following a successful motion for summary judgment.

- *International Business Machines Corporation v. Rakuten, Inc., et al.*, 1-21-CV-00461 (D. Del.). Lead counsel in this patent litigation relating to five patents purporting to cover web and mobile technologies.

- *Pop Top Corp. v. Rakuten Kobo Inc.*, 20-cv-04482-DMR (N.D. Cal. 2021). Lead counsel in this patent infringement case in the District Court for the Northern District of California relating to a method of highlighting internet documents. Succeeded in obtaining a judgment of non-infringement, affirmed on appeal, following a successful motion for summary judgment as well as an award of attorneys' fees following a successful motion for sanctions under Section 285.

- *Satco Products, Inc. v. Signify North America Corporation, et al.*: Represented Satco in a patent infringement action filed against Signify North America Corp. and Signify Holding B.V. in the United States District Court for the Western District of Texas, alleging infringement of three patents directed to light bulbs containing LED filament and Gimbal LED recessed lights.

- *Satco Products, Inc. v. Seoul Semiconductor Co., Ltd., et al.*: Represented Satco in a patent infringement action filed against Seoul Semiconductor Inc. and Seoul Semiconductor Co., Ltd. in the United States District Court for the Northern District of Georgia.

- *Uniloc USA, Inc., et al. v. Samsung Electronics America, Inc., et al.*, 18-cv-00508 (E.D. Tex.). Represented Samsung in a patent infringement case alleging infringement of a patent concerning mobile phone lock screen functionality.

- *Sinostar Global Ltd. v. Rakuten Kobo, Inc.*, 20-CV-00096 (E.D. Tex.). Led the defense of this patent litigation relating to electronic book hardware technology.

- *Signify North America Corporation et al v. Satco Products, Inc.*, 19-CV-06125 (E.D.N.Y). Led the defense of this patent litigation relating to light emitting diode (LED) technology.

- *Seoul Semiconductor Co., Ltd. v. Satco Products, Inc.*, 19-CV-06719 (E.D.N.Y.). Led the defense of this patent litigation relating to light emitting diode (LED) technology.

- *I.SV.EL. Societa Italiana Per Lo Sviluppo Delleletrronica S.P.A. v. Rakuten Kobo, Inc.*, 18-CV-00068 (D. Del.). Led the defense of this patent litigation relating to electronic book software technology.

- *Uniloc USA, Inc. et al. v. Samsung Electronics America, Inc. et al.*, 18-CV-00042 (E.D. Tex.). Led the defense of this patent litigation relating to mobile phone technologies.

- *Product Association Technologies LLC v. ShopStyle, Inc.*, 17-CV-00978 (D. Del.). Led the defense of this patent litigation relating to Internet database technology.

- *Braun Melsungen AG, et al. v. Becton, Dickinson and Company, et al.*, 16-CV-00411 (D. Del.). Led this patent litigation involving infringement of patents relating to IV catheter safety systems.

- *Garmin Switzerland GMBH and Garmin Corporation v. Navico, Inc.*, 16-CV-2706 (D. Kan.). Led the defense of this patent litigation relating to marine route navigation technology.

- *American Needle, Inc. v. CafePress Inc.*, 15-CV-03968 (N.D. Ill.). Led the defense of this patent litigation relating to graphical user interface technology.

- *FlatWorld Interactives LLC v. Samsung Electronics Co. Ltd, et al.*, 12-CV-00804 (D. Del.). Led the defense of this patent litigation relating to software for removing images from a touch screen.

- *E. Technology v. Samsung Electronics Co., Ltd., et al.*, 12-CV-02825 (W.D. Tenn.). Led the defense of this patent litigation relating to technology for storing user profiles and user libraries of files on servers and accessing them on a client device.

- *Digital Audio Encoding Systems, LLC v. eBay Inc.*, 16-CV-00491 (D. Del.); Digital Audio Encoding Systems, LLC v. LG Electronics, Inc., 16-CV-00562 (D. Del.). Led the defense of these patent litigations relating to the encoding of signals based on a property of the receiving device.

GT GreenbergTraurig

- *Mobile Telecommunications Technologies, LLC v. Amazon.com, Inc.,* 14-CV-00883 (E.D. Tex.). Led the defense of this patent litigation relating to technology for two-way wireless communications, including methods and devices for processing data messages between a mobile unit and a network operations center, and delivery notification technology.

- *Guyzar LLC v. Ebates, Inc.,* 15-CV-02000 (E.D. Tex.). Led the defense of this patent litigation relating to Internet third party login technologies.

- *Blue Spike, LLC v. 3M Cogent, Inc.,* 12-CV-499 (E.D. Tex.). Led the defense of this patent litigation relating to digital watermarking technology.

- *Mobile Telecommunications Technologies, LLC v. Samsung Telecommunications America, LLC,* 13-CV-00259 (E.D. Tex.). Led the defense of this patent litigation relating to technology for two-way wireless communications, including methods and devices for processing data messages between a mobile unit and a network operations center.

- *Cellport Systems, Inc. v. Samsung Electronics Co., Ltd., et al.,* 13-CV-00180 (D. Colo.). Led the defense of this patent litigation relating to technology for selecting one of a plurality of communication channels over which to transmit data using a wireless device.

- *Data Speed Technology, LLC v. Blackboard Inc.,* 13-CV-1445 (D. Del.). Led the defense of this patent litigation relating to computer information storage systems.

- *Eclipse IP LLC v. CafePress, Inc.,* 13-CV-01711 (D. Del.). Led the defense of this patent litigation relating to electronic messaging, notification and authentication systems.

- *Bluebonnet Telecommunications LLC v. Samsung Electronics America Inc., et al.,* 12-CV-504 (E.D. Tex.). Led the defense of this patent litigation relating to mobile device features allowing a user to determine whether certain telephony features are active, deactivate certain features and silence the ringer.

- *Cinsay, Inc. v. Liveclicker, Inc.*, 13-cv-04126 (N.D. Tex.). Represented the defendant in a patent litigation regarding interactive text/advertisement overlays over videos.

- *Express Card Systems LLC v. CafePress Inc.*, 13-cv-137 (E.D. Tex.); *Express Card Systems LLC v. Target Corp.*, 13-cv-00020 (E.D. Tex. 2013). Represented the defendants in patent litigation regarding systems for creating customized greeting cards.

- *ORG Structure Innovations, LLC v. Fischer International Identity, LLC*, 12-cv-01464-SLR (D. Del. 201). Represented the defendant in patent litigation regarding computer software.

- *Anvik Corporation v. Nikon Precision, Inc., et al.*, 05-cv-7891 (S.D.N.Y.). Represented the plaintiff in patent litigation relating to lithography methods used to expose glass panels used in the fabrication of LCD panels.

- *Williamson, on Behalf of and as Trustee for At Home Bondholders' Liquidating Trust v. Verizon Communications Inc., et al.*, 11-cv-04948 (S.D.N.Y.). Represented the plaintiff in patent litigation relating to internet protocol television systems.

- *IpLearn, LLC v. Blackboard Inc.*, 11-cv-00876 (D. Del.). Represented the defendant in patent litigation regarding computer-aided learning systems.

- *Xpoint Technologies, Inc. v. Intel Corporation, et al.*, 09-cv-0026 (D. Del.). Represented the plaintiff in patent litigation relating to computer backup and restore technology.

- *Xpoint Technologies, Inc. v. Microsoft Corporation, et al.*, 09-CV-0628 (D. Del.). Represented the plaintiff in patent litigation relating to Peer I/O technology.

- *IGT v. Las Vegas Gaming, Inc.*, 07-cv-00415 (D. Nev.). Represented the defendant in a complex copyright/trademark infringement case concerning audiovisual display of electronic gaming machines.

- *Regal Electronics Inc. v. Bel Fuse, Inc., et al.*, 03-cv-01296 (N.D. Cal.). Represented the defendant in a patent litigation regarding high speed data connectors.

 GreenbergTraurig

### Consumer Products

- *Blazer v. eBay, Inc.*, 1:15-cv-01059 (N.D. Ala.). Represented eBay in a patent litigation relating to wooden carpenter bee traps.

- *USB Technologies, LLC v. eBay Inc., et al.*, 2:15-cv-04836 (C.D. Cal.). Represented eBay in patent litigation regarding lighting to USB flash drive products.

- *Carson Optical, Inc. v. eBay Inc.*, 2:2015-cv-03793 (E.D.N.Y. 205). Representing eBay in patent litigation regarding head magnifying glasses and head belts for head magnifying glasses.

### Medical Device

- *Braun Melsungen AG, et al. v. Becton, Dickinson and Company, et al.*, 1:16-cv-00411 (D. Del.). Represented B. Braun in a litigation involving infringement by Becton, Dickinson and Company of 10 patents generally relating to IV catheter safety systems.

- *CAO Group, Inc. v. Biolase Technology, Inc., 12-CV-0038 (D. Utah).* Represented Biolase in patent litigation regarding laser-driven medical devices.

- *Laclede Professional Products Inc. v. Sultan Dental Products, Ltd.*, 98-cv-981 (C.D. Cal.). Represented the defendant in a patent infringement case involving dental fluoride foams.

### Financial Services

- *CryptoPeak Solutions, LLC v. 3M Company; CryptoPeak Solutions, LLC v. Charles Schwab & Co, Inc.*; *CryptoPeak Solutions, LLC v. optionsXpress, Inc.*, 15-cv-1284 (E.D. Tex. 2015). Represented 3M Company, Charles Schwab and optionsXpress in connection with a patent suit initiated by CryptoPeak Solutions, LLC in the Eastern District of Texas before Judge Schroeder. The asserted patent generally relates to securely generating public and private encryption keys in a verifiable manner. Settled with plaintiff on terms very favorable to clients.

- *Ruby Sands LLC v. Charles Schwab Corp.; Ruby Sands LLC v. Fidelity Investments*, 15-cv-01985 (E.D. Tex.). Represented Charles Schwab and Fidelity in litigations in the Eastern District of Texas before Judge Gilstrap. The asserted patent related to the capture and transfer of images from one image transfer device to another. Settled with plaintiff on terms very favorable to clients.

- *EMG Technology, LLC v. The Northwestern Mutual Life Insurance Company*, 14-cv-00094-MHS (E.D. Tex.). Represented Northwestern Mutual in litigation in the Eastern District of Texas before Judge Schneider. The asserted patent related to a system for navigating the Internet that converts standard HTML website pages to a "sister site" that enables the HTML website content to be navigated using a "simplified navigation system." GT was successful in getting plaintiff to dismiss the case with prejudice.

- *Leveraged Innovations, LLC. v. NASDAQ OMX Group, Inc., et al.*, 11-cv-3203 (S.D.N.Y.). Represented the plaintiff in patent litigation in the Southern District of New York relating to computer systems for creating and exchanging of shares of leveraged exchange-traded funds.

### Post-Issuance Patent Proceedings

- *Stingray Digital Group Inc. et al v. Music Choice (IPR2018-00114, 2017-01450, 2017-01193, 2017-01192, IPR2017-01191, IPR2017-00888).* Represented petitioner in IPR proceedings related to patents covering digital music technologies.

- *Becton Dickinson and Company v. B. Braun Melsungen AG* (IPR2017-01587). Represented patent owner in IPR proceedings related to patents covering IV catheter safety systems.

- *Samsung Electronics America, Inc. v. B.E. Technology, LLC* (IPR2014-00044). Represented petitioner in IPR proceedings related to patents related to storing user profiles and user libraries of files on servers and accessing them on a client device.

## Recognition & Leadership

### Awards & Accolades

- Listed, *Patexia*, "#42 Most Active Patent Litigation Attorney," 2022
- Listed, *Managing IP Magazine's World IP Handbook and Survey*, "IP Stars: New York Patent Stars," 2014-2021
- Listed, *IAM* magazine, "IAM Patent 1000," Litigation, 2014-2021
- Listed, *Super Lawyers* magazine, *New York Metro Super Lawyers*, 2019-2021
- Team Member, a *U.S. News - Best Lawyers* "Law Firm of the Year" in Trademark Law, 2020

### Professional & Community Involvement

- Member, Intellectual Property Owners Association
  - U.S. Patent Law Committee, 2020-2021
  - Patent Litigation Committee, 2020-2021
  - Next Generation Leaders Committee, 2020-2021

## Credentials

### Education

- J.D., Brooklyn Law School, 1996
- B.S.E., Industrial Engineering, University of Michigan, 1993

### Admissions

- New York
- U.S. Court of Appeals for the Federal Circuit
- U.S. Court of Appeals for the Second Circuit
- U.S. District Court for the Eastern District of New York
- U.S. District Court for the Eastern District of Texas
- U.S. District Court for the Southern District of New York
- U.S. Patent and Trademark Office

## News, Insights & Presentations



## GreenbergTraurig

### News

| | |
|---|---|
| **04.22.22** | Litigator of the Week Runners-Up and Shout Outs, *The American Lawyer Litigation Daily* |
| **04.15.22** | Chewy Inc. Beats IBM in Federal Patent Ruling That Could Be Bad News for Plaintiff Counsel, *Daily Business Review* |
| **04.12.22** | Chewy Beats IBM's Infringement Claims Over Internet Patents, *Bloomberg Law* |
| **04.12.22** | Court Tosses IBM Patent Lawsuit Against Pet Food Retailer Chewy, *Reuters* |
| **04.12.22** | NY Judge Clears Chewy Of Infringing 4 IBM Patents, *Law360* |
| **03.31.22** | Most Active and Best Performing Patent Litigators of 2022, *Patexia* |
| **02.17.22** | UC's LED Patent Campaign Ends In ITC Dismissal, *Law360* |
| **12.23.21** | UC Strikes Out At ITC In LED Patent Suit Against GE, Ikea, *Law360* |
| **02.19.21** | SATCO Files Patent Infringement Lawsuits against Signify Netherlands B.V. (Signify) and Seoul Semiconductor Co., Ltd. and Seoul Semiconductor, Inc., *Satco/Nuvo* |
| **02.16.21** | Chewy Accuses IBM Of Seeking 'Exorbitant' $36M For Patents, *Law360* |
| **01.15.21** | PTAB Axes Patent Involved In $4.3M Verdict Against Samsung, *Law360* |
| **03.22.17** | EBay Escapes Sting of Bee Trap Infringement Claims, *Law360* |
| **08.18.16** | Law360's Weekly Verdict: Legal Lions , *Law 360* |

### Presentations

| | |
|---|---|
| **11.16.17** | TC Heartland: Returning to Life under Section 1400(b) Venue, NYIPLA One-Day Patent CLE Seminar |

© 2022 Greenberg Traurig, LLP



# Justin A. MacLean

SHAREHOLDER

macleanj@gtlaw.com

**NEW YORK**
One Vanderbilt Avenue
New York, NY 10017
+1 212.801.3137

## Intellectual Property & Technology | Intellectual Property Litigation | Trademark & Brand Management | Trade Secrets

Justin A. MacLean is a shareholder in the Intellectual Property & Technology Practice of the firm's New York office. His areas of concentration include patent, trademark, copyright and trade secret litigation. Justin has been involved in all stages of litigation from pre-litigation diligence and enforcement and preliminary injunction proceedings through discovery (including electronic discovery), summary judgment, trial, and appeal as well as in *inter partes* review proceedings before the Patent Trial and Appeal Board. Justin has represented companies across a variety of industries and technologies both in enforcing their intellectual property rights and defending against claims of infringement.

In addition, Justin has wide-ranging experience in the areas of copyright prosecution, enforcement and counseling. He has filed copyright applications and designed copyright registration programs for clients in the apparel, software, consumer goods, and other diverse industries. A former examiner with the United States Copyright Office, he has advised clients from small, non-profit book publishers to leading digital music companies on issues such as copyright clearance, fair use, infringement avoidance, and licensing issues. Justin has also counseled writers, performing artists, publishers, and their heirs and representatives in connection with the assertion of statutory termination rights under the Copyright Act.

## Concentrations

- Patent litigation
- ANDA Hatch-Waxman litigation
- *Inter partes* review proceedings
- Trademark and copyright issues

## Experience

### Representative Matters

#### Patent Litigation and Related Matters

- *Orexigen Therapeutics, Inc. v. Actavis Laboratories FL, Inc.*: Representing Actavis/Teva in Paragraph IV challenge of Orexigen Therapeutics' patents in the District of Delaware relating to Contrave® extended-release tablets indicated for the treatment of obesity and weight management.

- *Uniloc 2017 LLC v. Samsung Electronics America, Inc., et al.*: Representing Samsung in 3 patent cases alleging infringement of patents concerning TV receivers, wireless communication networks, and anti-theft protection for mobile phones and other devices.

- *LEO Pharma A/S et al. v. Actavis Laboratories UT, Inc.*: Represented Actavis/Teva in Paragraph IV challenge of LEO Pharma A/S's patents in the District of Delaware relating to Picato® gel indicated for the treatment of actinic keratosis.

- *Garmin Switzerland GmbH, et al. v. Navico, Inc.*: Represented leading marine electronics company in patent and trademark infringement action brought by competitor in the District of Kansas. The patents related to marine route navigation technology.

- *I.SV.EL. Societa Italiana per lo Sviluppo Dell'Elettronica S.P.A. v. Rakuten Kobo Inc. et al.*: Member of litigation team that represented leading e-retailer in patent infringement action brought in the District of Delaware. The asserted patents generally relate to the use of user characteristics and preference data to populate user profiles and provide content.

- *E. Technology v. Samsung Electronics America, Inc.*: Represented Samsung Telecommunications America, LLC and Samsung Electronics America, Inc. in patent litigation brought by non-practicing entity in the Western District of Tennessee. Also member of team representing the same defendants in *inter partes* review of plaintiff's patent. The asserted patent generally relates to data management and retrieval over a network. The asserted patent was invalidated by the Patent Trial and Appeal Board, and that decision was upheld by the Federal Circuit.

- *Blazer v. eBay, Inc.*; *USB Technologies, LLC v. eBay Inc., et al.*; *Carson Optical, Inc. v. eBay Inc.*: Represented eBay Inc. in various patent infringement actions involving allegedly infringing products listed by users of eBay's website. In one such action, summary judgment was granted for eBay on claims of direct infringement, contributory infringement, and inducement.

- *Meda Pharmaceuticals Inc., et al. v. Teva Pharmaceuticals USA, Inc.*: Represented Teva Pharmaceuticals in connection with Hatch-Waxman litigation involving nasal spray DYMISTA in the District of Delaware.

- *Crye Precision, LLC, et al. v. Duro Textiles, LLC; Crye Precision, LLC, et al. v. Bennettsville Printing; Navajo Air, LLC v. Crye Precision, LLC, et al.*: Represented Crye Precision LLC and Lineweight, LLC, in breach of contract actions against former licensees involving acclaimed camouflage pattern design and technology.

- *SkillSurvey, Inc. v. Checkster LLC*: Represented SkillSurvey, Inc. in patent infringement action filed against competitor. The asserted patent relates to methods and systems for collecting and analyzing information from references identified by job candidates.

- *Blue Spike, LLC v. 3M Cogent, Inc.*: Represented 3M Cogent, Inc. in patent litigation filed by non-practicing entity. The asserted patents generally relate to digital content recognition technology.

- *Nextec Applications v. United States, et al.*: Member of litigation team that represented an integrated textile company as a third-party defendant in patent litigation brought against the United States in the Court of Federal Claims and parallel *inter partes* review initiated at the Patent Office. The asserted patents generally relate to methods for treating fabrics. Resulted in dismissal of the plaintiff's claims with prejudice.

- *Delavau LLC v. J.M. Huber Corp., et al.*: Represented leading pharmaceutical ingredient manufacturer in enforcement of patent rights against competitor. The asserted patents generally relate to methods for manufacturing calcium carbonate granulation.

- *Rydex Technologies LLC v. B. Braun Medical Inc., et al.*: Represented B. Braun Medical Inc. in a multi-defendant patent lawsuit in the District of Delaware. The asserted patent generally relates to wireless intravenous medical pump controls.

- *CareFusion 303 Inc. v. B. Braun Medical Inc.*: Represented B. Braun Medical Inc. in connection with the defense of a claim for patent infringement by CareFusion 303. The asserted patents generally

relate to medical valve devices. Resulted in a grant of summary judgment on B. Braun's affirmative defense of laches, and dismissal of the case with prejudice as an evidentiary sanction against plaintiff.

- *Enzo Biochem Inc., et al. v. Affymetrix, Inc.*: Represented Enzo Biochem, Inc. and Enzo Life Sciences, Inc., in connection with seven patent and breach-of-contract litigations involving nucleic acid labeling and detection technology.

- *Selecto, Inc. v. Everpure, LLC et al.*: Member of litigation team representing Pentair Filtration, Inc. and Everpure, LLC in connection with multiple patent litigations involving water filtration technology. Resulted in confidential settlement.

- *CyberSource Corporation v. Retail Decisions, Inc.*: Member of litigation team that defended Retail Decisions, Inc. in an action for alleged infringement of a patent for methods of detecting credit card fraud. Resulted in a grant of summary judgment of invalidity, which was subsequently affirmed by the Federal Circuit.

**Trademark, Copyright, and Trade Secret Litigation**

- *The Sanborn Library LLC v. ERIS Information Inc. et al.*: Representing provider of environmental risk information products and services in copyright infringement action involving alleged infringement of copyrights in fire insurance maps.

- *Ponderosa Twins Plus One, et al. v. iHeartMedia, Inc.. et al*.: Representing leading digital music service providers in putative class-action litigations involving alleged infringement of common law copyrights in pre-1972 sound recordings.

- Represent a variety of Internet media companies in copyright infringement actions brought by clients of notorious "copyright troll," Richard Liebowitz.

- *Elementis Holdings Limited v. Platform Specialty Products Corp.*: Representing specialty chemicals company in defense of lawsuit for alleged trademark infringement. Successfully defeated Plaintiff's motion for a preliminary injunction.

- *Graham v. Prince et al.; McNatt v. Prince et al.*: Member of litigation team representing acclaimed modern artist in actions for alleged infringement of photographs.

- Represented leading digital music service providers in actions for alleged copyright infringement filed by independent music publisher. All resulted in confidential settlements.

- *3M Company, et al. v. ACS Industries, Inc.*: Represented 3M Company and 3M Innovative Properties Company in action for misappropriation of trade secrets, unfair competition and tortious interference against a competitor.

- *Consumerinfo.com, Inc. v. Chang et al.*: Represented Adaptive Marketing LLC in U.S. District Courts in Los Angeles and Connecticut related to claims for trademark, copyright and trade dress infringement, cybersquatting, trademark dilution and unfair competition brought by and against a major competitor regarding Internet paid search marketing and various related domain names used by the parties in the credit reporting and monitoring market.

### Previous Experiences

- Intern, Office of the General Counsel, United States Copyright Office, 2008
- Copyright Examiner, United States Copyright Office, 2002-2005

# Recognition & Leadership

### Awards & Accolades

- Listed, *Super Lawyers* magazine, *New York Super Lawyers*, "Rising Stars," 2013-2019

© 2022 Greenberg Traurig, LLP

**Professional & Community Involvement**

- Member, American Bar Association
- Member, New York State Bar Association

---

## Credentials

### Education

- J.D., University of Michigan Law School, 2008
    - Associate editor, *Michigan Law Review*
    - Asian Pacific American Law Students Association
- M.M., Johns Hopkins University, 2002
- B.M., *with highest honors*, University of Michigan, 1999

### Admissions

- New York
- U.S. Court of Appeals for the Federal Circuit
- U.S. Court of Appeals for the Second Circuit
- U.S. Court of Federal Claims
- U.S. District Court for the Eastern District of New York
- U.S. District Court for the Southern District of New York
- U.S. District Court for the Eastern District of Texas
- U.S. District Court for the Western District of Texas

---

## News, Insights & Presentations

### News

| 02.18.22 | GM Web Privacy Suit Tossed For Being Unlike Facebook Case, *Law360* |
| 02.12.21 | Judge Won't Decide Who Owns Tom Clancy's Jack Ryan, *Law360* |
| 03.22.17 | EBay Escapes Sting of Bee Trap Infringement Claims, *Law360* |
| 01.03.16 | Greenberg Traurig promotes two to counsel, *World Intellectual Property Review* |

### Insights

| 05.05.20 | Allen v. Cooper and Georgia v. Public.Resource.org: The Supreme Court Navigates the Relationship Between State Government and Federal Copyright Law | GT Alert |
| 02.10.17 | NY High Court Deals Copyright Setback To Recording Artists, *Law 360* | Published Article |

---

© 2022 Greenberg Traurig, LLP

| | |
|---|---|
| **12.22.16** | New York's Landmark Ruling on Pre-1972 Sound Recordings Brings Digital Music Providers Holiday Cheer and Leaves Recording Artists with a Lump of Coal | GT Alert |
| **08.18.16** | The Fallout from Halo: Opinions of Counsel and the Evolving Standard for Willfulness, *Inside Counsel* | Published Article |
| **11.07.14** | Consent Order Settles FTC Complaint Against Patent Assertion Entity | GT Alert |
| **06.19.14** | The More Things Change, the More They Stay the Same: Supreme Court Holds Computer-Implemented Invention Patent-Ineligible | GT Alert |
| **06.03.14** | Supreme Court Addresses Induced Patent Infringement and Indefiniteness Standard in Key Decisions | GT Alert |
| **05.12.14** | Life Sciences & Medical Technology Newsletter, Spring 2014 | GT Alert |
| **05.02.14** | Supreme Court Sets Standards for Attorneys Fees Under The Patent Act | GT Alert |

## Presentations

| | |
|---|---|
| **06.10.20** | Presenter, Supremely Informative Webinar: Comprehensive Update on Recent IP Supreme Court Cases |

© 2022 Greenberg Traurig, LLP

GT | GreenbergTraurig



# Vimal M. Kapadia

OF COUNSEL

kapadiav@gtlaw.com

**NEW YORK**
One Vanderbilt Avenue
New York, NY 10017
+1 212.801.2241

## Intellectual Property & Technology | Intellectual Property Litigation

Vimal M. Kapadia is a member of the Intellectual Property & Technology Practice of the firm's New York office. Vimal focuses his practice on complex patent litigation and prosecution involving a broad range of technologies, including electrical arts pertaining to mechanical systems, computer architecture, medical devices, Internet applications, mobile operating systems, wireless communications and user interfaces. He has represented clients in various litigations in federal court, as well as before the Patent Trial and Appeal Board and the International Trade Commission. He also advises clients on all aspects of patentability and provides patent counseling regarding invalidity, non-infringement and freedom to operate assessments.

Prior to practicing law, Vimal was a computer chip designer and software engineer at a large, multinational technology company for over 10 years. Vimal is fluent reading and writing source code and is an inventor on six U.S. patents in the fields of cross-model verification and computer chip design.

## Concentrations

- Patent litigation

- General IP counseling, licensing, due diligence, and opinions

- Post-issuance patent proceedings, including *inter partes* review, post-grant review, covered business method patents and *ex parte* reexaminations

## Experience

### Previous Experience

- Advisory Engineer, International Business Machines (IBM), zSeries/S390, 2001-2013

- Software Engineer, Microsoft Corp., Terminal Server, Summer 2000

### Issued Patents

- Patent, Method, computer program product, and hardware product for eliminating or reducing operand line crossing penalty, U.S. Patent No. 9,201,655, December 1, 2015

- Patent, Processor error checking for instruction data, U.S. Patent No. 8,201,067, June 12, 2012

© 2022 Greenberg Traurig, LLP

- Patent, Processor and method for synchronous load multiple fetching sequence and pipeline stage result tracking to facilitate early address generation interlock bypass, U.S. Patent No. 7,987,343, July 26, 2011

- Patent, Recycling long multi-operand instructions, U.S. Patent No. 7,962,726, June 14, 2011

- Patent, Method, system and computer program product for failure analysis implementing automated comparison of multiple reference models, U.S. Patent No. 7,908,518, March 15, 2011

- Patent, Method and system for implementing store buffer allocation, U.S. Patent No. 7,870,314, January 11, 2011

## Recognition & Leadership

### Awards & Accolades

- Ranked 17th, *Patexia*, "Top 100 Best Performing Patent Litigators Representing Defendants," 2022

- Listed, *Managing IP Magazine's World IP Handbook and Survey*, "Rising Star - United States," 2020-2021

## Credentials

### Education

- J.D., Fordham University School of Law, 2012

- B.S., *with honors*, Electrical and Computer Engineering, Rutgers College, 2001

### Admissions

- New York

- New Jersey

- U.S. Patent and Trademark Office

## News, Insights & Presentations

### News

**04.22.22** | Litigator of the Week Runners-Up and Shout Outs, *The American Lawyer Litigation Daily*

GT | GreenbergTraurig



# Katie Albanese

ASSOCIATE

albanesek@gtlaw.com

**NEW YORK**
One Vanderbilt Avenue
New York, NY 10017
+1 212.801.6533

https://www.linkedin.com/in/katie-albanese-55683850/

## Intellectual Property Litigation | Intellectual Property & Technology

Katie Albanese is a member of the Intellectual Property Litigation Practice in Greenberg Traurig's New York office. She is a registered patent agent. Katie focuses her practice on litigating intellectual property matters, including patents, trademarks, and copyright. Katie's complex patent litigation experience includes medical devices, ANDA/Hatch Waxman matters, electronics, and a variety of software-based technologies. In addition to litigation, Katie has experience relating to patent prosecution matters before the United States Patent and Trademark Office, such as drafting and prosecuting patents and handling post-grant review proceedings before the Patent Trial and Appeal Board including *inter partes* reviews. Katie also has experience before the U.S. International Trade Commission (ITC), having handled investigations under Section 337 of the Tariff Act of 1930. While in law school, Katie externed with the Honorable Richard G. Andrews in the U.S. District Court for the District of Delaware.

## Experience

### Representative Matters

- *Pop Top Corp. v. Rakuten Kobo Inc.* (N.D. Cal.): Counsel for Rakuten Kobo in patent litigation relating to a method of highlighting internet documents. Obtained summary judgment of non-infringement.

- *Sinostar Global Ltd. v. Rakuten Kobo, Inc.* (E.D. Tex.). Counsel for Rakuten Kobo in patent litigation relating to electronic book hardware technology.

- *Vifor Fresenius Medical Care Renal Pharma Ltd., et al. v. Teva Pharmaceuticals USA, Inc.* (D. Del.): Counsel for Teva in a fully remote Hatch-Waxman bench trial involving the VELPHORO® patents directed to iron oxy-hydroxide formulations and associated methods for treating hyperphosphatemia.

- *Orthopaedic Hospital v. Aesculap Implant Systems (D. Del.):* Counsel for Aesculap in patent suit relating to joint replacement technology.

- *Theallet, et al. v. H&M Hennes and Mauritz, L.P.* (S.D.N.Y.):Counsel for H&M in litigation relating to alleged copyright and trade dress infringement.

- *Uniloc 2017 LLC v. Samsung Electronics America, Inc. (E.D. Tex.)*: Counsel for Samsung in 3 patent cases alleging infringement of patents concerning TV receivers, wireless communication networks, and anti-theft protection for mobile phones and other devices.

- *Sovereign Peak Ventures, LLC v. LG Electronics, Inc..* (E.D. Tex.): Counsel for LG Electronics in a case involving 7 patents concerning streaming video, WiFi Direct and electronic assistants.

© 2022 Greenberg Traurig, LLP

- *In the Matter of Certain Electronic Devices With Optical Filters and Optical Sensor Systems and Components Thereof* (ITC): Counsel for Optrontec Inc. in an ITC action brought by Viavi Solutions Inc. involving three patents concerning 3D optical filters and sensors systems used in cellphones, tablets and other mobile devices.
- Represented Black Dragon Capital in connection with its acquisition of Grass Valley, a leading technology supplier of advanced broadcast and media solutions, with operations in over 20 different jurisdictions worldwide.
- Represented an affiliate of Centre Partners in connection with its acquisition of Outdoor Recreation Company of America, LLC, a leading manufacturer of coolers and various drinkware.

### Internships

- Judicial Extern, Hon. Richard G. Andrews, U.S. District Court for the District of Delaware, 2017
- Patent Professional Intern, IBM, 2017

## Recognition & Leadership

### Awards & Accolades

- Winner, Federal Circuit Bar Association, George Hutchinson Writing Competition, 2019

### Professional & Community Involvement

- Mentor, Leading Youth Through Empowerment (Wilmington, DE), 2020-present
- Member, Federal Circuit Bar Association
- Member, CHiPS
- Member, American Association of Physicists in Medicine, 2014-Present
- Member, American Physical Society, 2009-Present
- Member, American Bar Association, 2016-Present
- Member, Benjamin Franklin American Inns of Court, 2016-2019
- Member, New York Intellectual Property Law Association, 2016-Present
- Member, Croatian-American Bar Association, 2016-Present
- Member, American MENSA, 2013-Present
    - Scholarship Judge, 2013-Present

## Credentials

### Education

- J.D., Villanova University School of Law, 2019
    - Concentration in Intellectual Property Law
    - Nominated, Jan Jancin Award for Excellence in the Study of Intellectual

### Admissions

- New York
- U.S. Patent and Trademark Office
- U.S. District Court for the Eastern District of New York

© 2022 Greenberg Traurig, LLP

- Property
  - President, Intellectual Property Society
  - President, Fashion Law Society
- M.S., Medical Physics, Duke University, 2016
  - Recipient, Director's Award for Exemplary Service
- B.A., Physics, New York University, 2013
  - Minor in Mathematics

- U.S. District Court for the Southern District of New York
- U.S. District Court for the Eastern District of Texas
- U.S. Court of Appeals for the Federal Circuit

### Languages

- Spanish, Conversational

## News, Insights & Presentations

### News

| 12.23.21 | UC Strikes Out At ITC In LED Patent Suit Against GE, Ikea, *Law360* |
| 04.25.16 | This Year in Innovation, *Duke Innovation Studio* |
| 03.23.16 | The Future of 3D Printing in Medicine, *Duke Research Blog* |

### Insights

| 04.23.21 | Just Because Blue Ivy Is Photographed Wearing Your Shoes Does Not Mean They Are Entitled to Trademark Protection | GT Alert |
| 06.22.20 | Forget Your Uber Rating Whats Your Retail Score, *TotalRetail* | Published Article |
| 04.01.20 | When is Enough Enough? What Constitutes Adequate Written Description of a Genus, *Federal Bar Circuit Journal* | Published Article |
| 01.29.20 | US-China Trade Deal Will Help IP Owners, *Law360* | Published Article |
| 01.21.20 | Impact of the China-U.S. Trade Deal on Intellectual Property Protection | GT Alert |
| 06.16.16 | Tissue Equivalent Phantom Design for Optimization of a Coherent Scatter Imaging System, *Duke University* | Published Article |
| 03.22.16 | Validation of coded aperture coherent scatter spectral imaging for normal and neoplastic breast tissues via surgical pathology, *Medical Imaging 2016: Physics of Medical Imaging* | Published Article |

© 2022 Greenberg Traurig, LLP



# Danielle Zapata

ASSOCIATE

zapatad@gtlaw.com

**NEW YORK**
One Vanderbilt Avenue
New York, NY 10017
+1 212.801.9269

https://www.linkedin.com/in/daniellemzapata/

## Intellectual Property Litigation | Intellectual Property & Technology

Danielle Zapata is a member of the Intellectual Property Litigation Practice in Greenberg Traurig's New York office.

## Experience

### Internships

- Legal Intern, U.S. Patent and Trademark Office, 2020
- Judicial Extern, U.S. District Court for the Northern District of Texas, 2020
- Congressional Intern, Office of U.S. Senator John Boozman, 2017

## Credentials

### Education

- J.D., *Valedictorian, summa cum laude,* University of North Texas, Dallas College of Law, 2021
    - Editor-in-Chief, *UNT Dallas Law Review: On the Cusp Law Journal*
- B.S., Biomedical Engineering, University of Arkansas, 2018

### Admissions

- New York
- U.S. District Court for the Southern District of New York
- U.S. District Court for the Eastern District of Texas

# Exhibit 5

# AIPLA
# 2019
## Report of the Economic Survey

Prepared Under Direction of
Law Practice Management Committee

American Intellectual Property Law Association
1400 Crystal Drive, Suite 600
Arlington, VA 22202

www.aipla.org



# Report of the Economic Survey 2019

Prepared Under Direction of the
American Intellectual Property Law Association
Law Practice Management Committee

Frank L. Gerratana, Chair

September 2019

Prepared by:



910 Clopper Road, Suite 210N ■ Gaithersburg, Maryland 20878
TEL: (240) 268-1262 ■ ARI@associationresearch.com

# AIPLA Law Practice Management 2019 Economic Survey Participants

We would like to thank those who helped put together and review
this year's AIPLA Economic Survey:

**Frank Gerratana:** Fish & Richardson, PC – Chair of LPM Committee

**Arlene Neal:** Neal Bilbo, LLC – Vice Chair of LPM Committee

**Stephanie Sanders:** Kilpatrick Townsend & Stockton, LLP – Co-Chair of the Economic Survey Subcommittee

**Ariana Fleishman:** PiVerse, Inc. – Co-Chair of the Economic Survey Subcommittee

**DeAnn Smith:** Foley Hoag – Board Liaison

---

## Economic Survey Subcommittee Members:

| | |
|---|---|
| **Ashraf Abdul-Mohsen:** ARI | **John Gorecki:** Anderson Gorecki, LLP |
| **Iasha Chaudhry:** Smart & Biggar | **Megan Kirkegaard:** ARI |
| **Ryan Dean:** Umberg Zipser, LLP | **Joshua Kresh:** DLA Piper LLP, US |
| **Meghan Donohoe:** AIPLA | |

© 2019 American Intellectual Property Law Association

All rights reserved. No part of this book may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopying, recording, or by an information storage and retrieval system, without permission in writing from the publisher.

Printed Copies of this report are available from AIPLA at a cost of $75 per copy for members and $495 per copy for non-members.

American Intellectual Property Law Association
1400 Crystal Drive, Suite 600
Arlington VA 22202
(703) 415-0780
www.aipla.org

053

# Private Firm, Equity Partner

## Average hourly billing rate in 2018 (Q37)

*Private Firm, Equity Partner*

| | | Number of Individuals | Mean (Average) | 10th Percentile 10% | First Quartile 25% | Median (Midpoint) | Third Quartile 75% | 90th Percentile 90% |
|---|---|---|---|---|---|---|---|---|
| All Individuals | | 302 | $521 | $330 | $375 | $475 | $650 | $796 |
| Years of IP Law Attorney Experience | 7-9 | 9 | $356 | ISD | $325 | $370 | $390 | ISD |
| | 10-14 | 40 | $438 | $280 | $346 | $398 | $500 | $668 |
| | 15-24 | 119 | $505 | $325 | $375 | $448 | $650 | $750 |
| | 25-34 | 86 | $552 | $344 | $429 | $500 | $665 | $833 |
| | 35 or More | 45 | $613 | $390 | $475 | $595 | $713 | $916 |
| Location | Boston CMSA | 13 | $747 | $369 | $450 | $800 | $1,015 | $1,080 |
| | NYC CMSA | 22 | $559 | $365 | $408 | $475 | $699 | $964 |
| | Philadelphia CMSA | 10 | $599 | $433 | $486 | $560 | $729 | $823 |
| | Washington, DC CMSA | 43 | $590 | $354 | $430 | $570 | $700 | $850 |
| | Other East | 10 | $462 | $314 | $365 | $461 | $513 | $691 |
| | Metro Southeast | 12 | $418 | $292 | $343 | $375 | $421 | $746 |
| | Other Southeast | 8 | $414 | ISD | $354 | $375 | $463 | ISD |
| | Chicago CMSA | 20 | $537 | $351 | $435 | $533 | $644 | $734 |
| | Minne.-St. Paul PMSA | 15 | $443 | $290 | $330 | $420 | $545 | $626 |
| | Other Central | 62 | $421 | $283 | $342 | $390 | $500 | $646 |
| | Texas | 19 | $534 | $400 | $406 | $460 | $650 | $800 |
| | Los Angeles CMSA | 13 | $586 | $336 | $440 | $575 | $675 | $978 |
| | San Francisco CMSA | 14 | $665 | $385 | $464 | $650 | $826 | $1,023 |
| | Other West | 41 | $496 | $300 | $343 | $450 | $623 | $769 |
| IP Technical Specialization (>=50%) | Biotechnology | 13 | $610 | $304 | $418 | $600 | $818 | $990 |
| | Chemical | 16 | $462 | $265 | $374 | $465 | $593 | $636 |
| | Computer Hardware | 5 | $521 | ISD | $313 | $395 | $793 | ISD |
| | Computer Software | 24 | $493 | $313 | $380 | $483 | $596 | $745 |
| | Electrical | 27 | $586 | $350 | $400 | $520 | $670 | $1,010 |
| | Mechanical | 63 | $480 | $337 | $360 | $450 | $570 | $700 |
| | Medical / Health Care | 18 | $537 | $300 | $396 | $497 | $650 | $743 |
| | Pharmaceutical | 10 | $626 | $405 | $465 | $600 | $761 | $956 |
| | Other areas | 3 | $450 | ISD | ISD | $450 | ISD | ISD |
| Age | 35-39 | 14 | $451 | $246 | $313 | $365 | $655 | $708 |
| | 40-44 | 36 | $446 | $325 | $371 | $400 | $556 | $665 |
| | 45-49 | 46 | $502 | $329 | $368 | $439 | $600 | $822 |
| | 50-54 | 64 | $510 | $350 | $400 | $499 | $636 | $750 |
| | 55-59 | 65 | $550 | $300 | $365 | $500 | $675 | $958 |
| | 60 or Older | 74 | $568 | $350 | $445 | $530 | $653 | $838 |
| Gender | Male | 257 | $525 | $334 | $375 | $482 | $650 | $785 |
| | Female | 42 | $486 | $277 | $350 | $425 | $631 | $814 |
| Highest Non-law Degree | Bachelor's Degree | 212 | $516 | $330 | $375 | $471 | $650 | $785 |
| | Master's Degree | 62 | $542 | $333 | $400 | $500 | $650 | $814 |
| | Doctorate Degree | 24 | $520 | $310 | $379 | $464 | $669 | $880 |
| Ethnicity | White/Caucasian | 262 | $520 | $330 | $375 | $481 | $650 | $796 |
| | Hispanic/Latino | 4 | $624 | ISD | $445 | $638 | $789 | ISD |
| | Asian/Pacific Islander | 11 | $547 | $315 | $400 | $500 | $675 | $910 |
| | Blended | 5 | $510 | ISD | $325 | $450 | $725 | ISD |
| | Other | 8 | $535 | ISD | $338 | $450 | $733 | ISD |
| Full-time Intellectual Property lawyers and agents in the firm or corporation | 1-2 | 24 | $385 | $275 | $303 | $350 | $450 | $585 |
| | 3-5 | 43 | $408 | $257 | $350 | $400 | $460 | $595 |
| | 6-10 | 32 | $473 | $340 | $364 | $448 | $529 | $650 |
| | 11-25 | 56 | $460 | $340 | $376 | $428 | $519 | $633 |
| | 26-50 | 46 | $522 | $329 | $390 | $500 | $609 | $737 |
| | 51-100 | 47 | $607 | $350 | $430 | $577 | $750 | $960 |
| | 101-150 | 24 | $686 | $353 | $421 | $710 | $938 | $1,023 |
| | More than 150 | 27 | $714 | $524 | $650 | $700 | $785 | $972 |

**054**

## Average hourly billing rate in 2018 (Q37)

*Private Firm, Partner-Track Attorney*

| | | Number of Individuals | Mean (Average) | 10th Percentile 10% | First Quartile 25% | Median (Midpoint) 50% | Third Quartile 75% | 90th Percentile 90% |
|---|---|---|---|---|---|---|---|---|
| All Individuals | | 99 | $387 | $250 | $285 | $350 | $438 | $600 |
| Years of IP Law Attorney Experience | Fewer than 5 | 20 | $309 | $222 | $250 | $283 | $325 | $575 |
| | 5-6 | 21 | $406 | $252 | $284 | $360 | $458 | $719 |
| | 7-9 | 22 | $364 | $260 | $298 | $338 | $435 | $509 |
| | 10-14 | 16 | $444 | $280 | $320 | $426 | $499 | $755 |
| | 15-24 | 18 | $405 | $280 | $308 | $388 | $456 | $621 |
| Location | Boston CMSA | 4 | $671 | ISD | $533 | $675 | $806 | ISD |
| | Philadelphia CMSA | 3 | $381 | ISD | ISD | $414 | ISD | ISD |
| | Washington, DC CMSA | 16 | $436 | $285 | $315 | $400 | $516 | $669 |
| | Other East | 5 | $312 | ISD | $288 | $300 | $343 | ISD |
| | Metro Southeast | 6 | $422 | ISD | $324 | $438 | $503 | ISD |
| | Other Southeast | 4 | $335 | ISD | $233 | $336 | $438 | ISD |
| | Chicago CMSA | 5 | $378 | ISD | $350 | $360 | $415 | ISD |
| | Minne.-St. Paul PMSA | 9 | $297 | ISD | $276 | $295 | $313 | ISD |
| | Other Central | 24 | $314 | $345 | $251 | $284 | $345 | $428 |
| | Texas | 4 | $448 | ISD | $310 | $345 | $688 | ISD |
| | Other West | 14 | $413 | $243 | $269 | $427 | $500 | $664 |
| IP Technical Specialization (>=50%) | Biotechnology | 4 | $487 | ISD | $381 | $418 | $661 | ISD |
| | Chemical | 6 | $318 | ISD | $254 | $318 | $379 | ISD |
| | Computer Software | 20 | $431 | $252 | $297 | $355 | $564 | $745 |
| | Electrical | 10 | $394 | $253 | $295 | $415 | $493 | $500 |
| | Mechanical | 26 | $340 | $247 | $280 | $310 | $374 | $507 |
| | Pharmaceutical | 3 | $572 | ISD | ISD | $525 | ISD | ISD |
| Age | Younger than 35 | 29 | $341 | $250 | $265 | $300 | $350 | $591 |
| | 35-39 | 29 | $389 | $250 | $280 | $310 | $468 | $735 |
| | 40-44 | 12 | $419 | $226 | $346 | $418 | $488 | $675 |
| | 45-49 | 13 | $381 | $277 | $298 | $375 | $433 | $563 |
| | 50-54 | 9 | $431 | ISD | $360 | $414 | $459 | ISD |
| | 55-59 | 5 | $416 | ISD | $300 | $435 | $523 | ISD |
| Gender | Male | 82 | $402 | $252 | $290 | $360 | $468 | $608 |
| | Female | 16 | $319 | $247 | $259 | $296 | $325 | $486 |
| Highest Non-Law Degree | Bachelor's Degree | 65 | $395 | $266 | $298 | $350 | $458 | $595 |
| | Master's Degree | 26 | $368 | $247 | $275 | $305 | $449 | $617 |
| | Doctorate Degree | 8 | $387 | ISD | $246 | $368 | $437 | ISD |
| Ethnicity | White/Caucasian | 85 | $386 | $250 | $288 | $350 | $438 | $595 |
| Full-time Intellectual Property lawyers and agents in the firm or corporation | 3-5 | 4 | $298 | ISD | $273 | $285 | $335 | ISD |
| | 6-10 | 7 | $347 | ISD | $285 | $350 | $400 | ISD |
| | 11-25 | 21 | $350 | $259 | $285 | $324 | $395 | $491 |
| | 26-50 | 25 | $376 | $248 | $290 | $345 | $470 | $508 |
| | 51-100 | 21 | $376 | $224 | $273 | $350 | $444 | $573 |
| | 101-150 | 11 | $392 | $280 | $300 | $325 | $505 | $707 |
| | More than 150 | 9 | $611 | ISD | $467 | $600 | $768 | ISD |

# Exhibit 6

**MacLean, Justin A. (Shld-NY-IP-Tech)**

| | |
|---|---|
| **From:** | Matt Wawrzyn <matt@wawrzynlaw.com> |
| **Sent:** | Wednesday, May 18, 2022 11:13 AM |
| **To:** | Raskin, Joshua L. (Shld-NY-IP-Tech) |
| **Cc:** | MacLean, Justin A. (Shld-NY-IP-Tech); Kapadia, Vimal M. (OfCnl-NY-IP-Tech); Zapata, Danielle (Assoc-NY-IP-Tech) |
| **Subject:** | Re: Pop Top v. Kobo |

**\*EXTERNAL TO GT\***

Josh: The note is accurate. As an update, Pop Top intends to maintain the current appeal. Have a good day. Matt

On Wed, May 18, 2022 at 9:55 AM <raskinj@gtlaw.com> wrote:

Matt,

This memorializes our conversation of May 12 regarding Pop Top's continued failure to comply with the Court's March 28, 2022 Order to pay Kobo $274,721.43 in attorneys' fees. That conversation was the result of my call to you after you failed to respond to my emails of April 29, April 30, May 9 and May 10. As of today, Pop Top has still not complied with the Court's Order and has, thus, been in violation for three weeks.

During our conversation, you informed me that "Pop Top does not currently have the funds to pay that amount" and that Pop Top is looking to take out a loan. When I asked whether you were not telling the truth when you said, in your April 29, 2022 letter, that "Pop Top is in the process of obtaining a letter of credit in the amount of $274,721.43," you said that Pop Top was unable to obtain the letter. When I asked if you could provide an estimate for when Kobo would be paid, you said you could not. Also, when I asked if you would still be pursuing your appeal of the Court's March 28 Order, you said that, while you needed to consult with your client, you do not believe so. In addition, I asked if Pop Top is going to be filing for bankruptcy and you responded that bankruptcy is an option.

I then explained that Pop Top cannot unilaterally ignore the Court's Order. In addition, I explained that Pop Top's continued violation of the Order is especially egregious since Pop Top continues to force Kobo to incur fees and costs in connection with Pop Top's frivolous activities before the Federal Circuit. For example, during the time of Pop Top's violation of the Order, Kobo has been forced to prepare for and attend oral argument on Pop Top's first frivolous appeal (which appeal was rejected by the Federal Circuit <u>one day</u> after oral argument). In addition, Kobo has been required to incur fees responding to Pop Top's still pending frivolous appeal of the Court's March 28 Order. Moreover, even while ignoring the Court's Order, Pop Top continues to pursue litigations against other defendants.

As I informed you during the call, today we will be filing a motion with the Federal Circuit to recover Kobo's fees (from <u>both</u> Pop Top and you, jointly and severally) incurred defending against Pop Top's first frivolous

1

**057**

appeal. You are also on notice that Kobo will be seeking to recover its fees incurred from defending against Pop Top's second frivolous appeal, if Pop Top continues to pursue it.

Lastly, as I informed you during the call, we will now be considering all remedies resulting from Pop Top's above-mentioned conduct, including its continued violation of the Court's March 28 Order.

Please let me know if you have any questions or wish to discuss this matter further.

Regards,

Josh

**Joshua L. Raskin**
Shareholder; Vice Chair, Global Patent Litigation Group

Chair, NY IP & Technology Group

Greenberg Traurig, LLP

One Vanderbilt Avenue | New York, NY 10017
T +1 212.801.6930

M +1 917.747.3351
raskinj@gtlaw.com  |  www.gtlaw.com  |  View GT Biography

GT GreenbergTraurig

If you are not an intended recipient of confidential and privileged information in this email, please delete it, notify us immediately at postmaster@gtlaw.com, and do not use or disseminate the information.

--
Matthew M. Wawrzyn
wawrzynllc.com
200 East Randolph Street
Suite 5100

Chicago, IL  60601
312.235.3120 (office)
312.233.0063 (facsimile)
847.274.9844 (mobile)
matt@wawrzynlaw.com

3

Case 2:20-cv-04482-DMR Document 25 Page 41 06 Filed: 02/02/2022 11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

POP TOP CORP,

          Plaintiff,

    v.

RAKUTEN KOBO INC.,

          Defendant.

Case No. 20-cv-04482-DMR

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

Re: Dkt. No. 28

Plaintiff Pop Top Corp. ("Pop Top") filed this patent case against Defendant Rakuten Kobo Inc. ("Kobo"), the maker and distributor of the Kobo App, which is an eReader software application for reading eBooks. It alleges that the Kobo App infringes the sole claim of U.S. Patent No. 7,966,623 ("the '623 patent"), which relates to a method of highlighting services on web pages and other "internet documents." Kobo now moves for summary judgment of non-infringement. [Docket No. 28.] The court held a hearing on May 27, 2021. For the following reasons, the court grants the motion.

I.     **BACKGROUND**

A.     **The '623 Patent**

The '623 patent is titled "Method and Apparatus for Enabling Highlighter Services for Visitors to Web Pages." Compl. Ex. 1 ('623 Patent). It was issued by the United States Patent and Trademark Office ("USPTO") on June 21, 2011. The patent "relates to methods and systems that enable content providers and authors of web-based content to enable highlighter functionality on their web pages." '623 Patent at 1:16-19.

The '623 patent seeks to improve an internet user's ability "to retrieve previously searched for and discovered information." Id. at 1:28-30. It explains that a bookmark, which is "a mechanism or function enabling a user to save a copy of a uniform resource locator (URL)," is a

"common mechanism used for information retrieval." *Id*. at 1:33-36. According to the '623 patent, bookmarks have shortcomings. They "provide little, if any, explanation or context as to what it is about the associated document that may be significant," "become stale, and in some cases, expire over time," and "are a less than ideal mechanism for sharing information" because they require additional steps to access a document that may be "burdensome." *Id*. at 1:48-51, 1:60-61, 2:1-17. To address these shortcomings, the '623 patent discloses "[a] method for invoking a highlighting service to operate with a web page." It explains that "the basic function of the highlighting service is to enable a user to highlight an object (e.g., text, graphical images, or a combination) of the web page such that the highlighted portion(s) can easily be recalled at a later time and/or shared with other users." *Id*. at 2:57-58, 5:21-25. The '623 patent includes one claim, which is set forth further below.

### B. Alleged Infringement

The Kobo App is an eReader software application for reading eBooks. It is available across various operating systems. [Docket No. 28-10 (Hunter Decl., Nov. 12, 2020) ¶ 5.] The Kobo App includes 1) the software that is pre-installed on Kobo eReader devices; 2) the Kobo Books app for smartphones and tablets; and 3) the Kobo Desktop app for Mac and PC devices. In each case, the Kobo App is operable only when it is stored and installed on the user's device. *Id*. Kobo offers eBooks in its Kobo store. After a purchaser buys an eBook through the Kobo store, Kobo delivers the eBook from its server to the user's Kobo App. *Id*. at ¶ 6. Kobo provides its eBooks in the "ePub" format. *Id*. at ¶ 7.

Pop Top contends that the Kobo App, which includes a tool that allows a reader to highlight portions of the text, literally infringes Claim 1 of the '623 patent. [Docket No. 28-2 (Raskin Decl., Nov. 12, 2020) ¶ 2, Ex. 1 (Pop Top's Disclosure of Asserted Claims and Infringement Contentions, "Disclosures") at 2.] *See also* Compl. ¶¶ 14-16.

### C. Procedural History

Pop Top filed this lawsuit on July 7, 2020. At the initial case management conference, Kobo requested leave to file an early summary judgment motion of non-infringement. Pop Top did not object. The parties agreed to limit discovery to what was needed by Pop Top to oppose the

early summary judgment motion. [Docket No. 21 (Joint CMC Statement) 2, 3.] They proposed an October 21, 2020 deadline by which Pop Top would serve its Patent Local Rules 3-1 and 3-2 disclosures and document production, as well as a briefing schedule for the motion. *Id*. at 5-6. The court granted Kobo leave to file an early summary judgment motion of non-infringement and adopted the proposed schedule. [Docket No. 26.] Kobo timely filed the instant motion.

## II.     LEGAL STANDARD

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. *Id*. at 248. The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id*. at 249.

To defeat summary judgment once the moving part has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, *Anderson*, 477 U.S. at 252; conclusory assertions will not suffice. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"Patent infringement is a two step inquiry." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1356 (Fed. Cir. 2005). First, the court "construe[s] the asserted claim"; second, the court "determine[s] whether the accused product or process contains each limitation of the

United States District Court
Northern District of California

3

properly construed claims, either literally or by a substantial equivalent." *Id.* at 1356-57. The first step is a question of law, while the second step is a question of fact. *Id.* at 1357. "Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Lab'ys, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). The court can resolve the issue of infringement on summary judgment "only 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.'" *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1376 (Fed. Cir. 2004) (quoting *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001)).

## III.    DISCUSSION

Kobo argues that it is entitled to summary judgment of non-infringement of the '623 patent because Pop Top cannot establish that the Kobo App meets any of the following four claim limitations: 1) "the internet document includes code for invoking a highlighting service to operate with the internet document"; 2) "the highlighting service hosted at a highlighting service server which is different from the content server hosting the internet document"; 3) "responsive to a user selecting the user interface object in the client web browser, the client web browser communicating a request to the highlighting service server to invoke the highlighting service"; and 4) "responsive to the request to invoke the highlighting service, the highlighting service server enabling the highlighting service for the internet document[.]" *Id.* at 10-11 (quoting '623 Patent at 8:25-40). *See TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002) ("To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system."). Kobo states that no claim construction is necessary to evaluate non-infringement. Mot. 11.[1]

_____

[1] Kobo goes on to offer that the only term that arguably could require construction is "highlighting service" because "its functionality is important to understanding the scope of the claims." It proposes construing "highlighting service" as "a functionality that enables a user to highlight a portion of a document." Mot. 11.

United States District Court
Northern District of California

Pop Top opposes. It is silent on whether the court must construe any claim terms in order to decide this motion.[2] Instead, it argues that the four purported claim limitations discussed in Kobo's motion "are, in fact, not present in claim 1 or the '623 patent" and are "made up out of whole cloth." Opp'n 1. It asserts that summary judgment must be denied because there are numerous material disputes as to the requirements of the claim. *Id*. at 2.[3]

Claim 1 sets forth a specific method to provide the ability to highlight an "internet document," and describes a sequence of steps. It states:

> 1. A computer-implemented method, comprising:
>
> at a content server, receiving a request for an internet document from a client web browser;
>
> serving the internet document from the content server to the client web browser, wherein the internet document includes code for invoking a highlighting service to operate with the internet document, the highlighting service hosted at a highlighting service server which is different than the content server hosting the internet document and the code causing a user interface object for invoking the highlighting service to be displayed by the client web browser in connection with the internet document;
>
> responsive to a user selecting the user interface object in the client web browser, the client web browser communicating a request to the highlighting service server to invoke the highlighting service;
>
> responsive to the request to invoke the highlighting service, the highlighting service server enabling the highlighting service for the internet document;
>
> responsive to the highlighting service being enabled for the internet document, displaying in the client web browser tools for highlighting text and objects of the internet document, said tools represented in a highlighter tool panel in the client web browser and said tools configured to provide the user with a selection of controls enabling

---

[2] The court interprets Pop Top's silence as agreement with Kobo that the court need not construe any terms in order to rule on Kobo's motion.

[3] Pop Top also initially argued that summary judgment should be denied because it is "entitled to explore infringement of claim 1 on a complete record after fact and expert discovery," and requested discovery under Rule 56(d). Opp'n 15. That rule provides that if a party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify [the party's] opposition," the trial court may deny the motion for summary judgment, continue the hearing to allow for such discovery, or "issue any other appropriate order." Fed. R. Civ. P. 56(d). At the hearing, Pop Top withdrew its Rule 56(d) request after admitting that it had conducted no discovery to date.

5

United States District Court
Northern District of California

> various features and functions of the highlighting service; and
>
> responsive to the user highlighting an object in the internet document, communicating the highlighted object or portions thereof to the highlighting service server for storage in such a manner as to be associated with the user who generated the highlight.

'623 Patent at 8:21-53.

As noted, Kobo moves for summary judgment of non-infringement by arguing that four limitations in claim 1 are not found in the Kobo App. The first is that the claim requires an "internet document" that "includes code for invoking a highlighting service to operate with the internet document." '623 Patent at 8:25-27. According to its infringement contentions, Pop Top contends that "internet document" means "[a] web based document opened with a browser." Using this definition, Pop Top asserts that an eBook delivered to the Kobo App constitutes an "internet document." Pop Top's Disclosures at 4 ("[t]he eBook that Kobo serves is an internet document, served from the content server to a client device."). Kobo argues that even if the court were to adopt Pop Top's contention that an eBook delivered to the Kobo App is an "internet document" within the meaning of Claim 1,[4] eBooks do not "include[ ] code for invoking a highlighting service to operate with the internet document[.]" Mot. 11-14.

Pop Top did not submit evidence in opposition to the motion, and utterly fails to raise any dispute of material fact with respect to Kobo's first argument. As an initial matter, Pop Top does not identify "code for invoking a highlighting service" in the "internet document." Its infringement contentions are vague on this point. They generally state that "eBooks served by Kobo that are highlightable include code. Regardless of other functionalities that the code may support, an important aspect is that the code invokes the highlighting service. In the absence of the code included with the eBook, the highlighting service is non-operative on the eBook." Pop Top's Disclosures at 5. Pop Top's failure to pinpoint specific "code for invoking a highlighting service" in the "internet document" is telling, for it had ample opportunity to review the relevant source code. The record establishes that prior to Pop Top serving its infringement contentions,

---

[4] Kobo disputes that eBooks used with the Kobo App are "internet documents," as that term is used in the claim. However, neither party asks the court to construe the term "internet document" and resolution of that dispute is not necessary to decide this motion.

6

Kobo produced a copy of a complete eBook file, including source code, for a book identified in the complaint. [Docket No. 35-1 (Raskin Decl., Feb. 4, 2021) ¶¶ 8-9, Exs. F, G.] Kobo also made a second book available for inspection. Raskin Decl. ¶ 8. At the hearing, Pop Top confirmed that it did not make use of the opportunity to inspect the second book.

Moreover, Kobo submitted affirmative unrebutted evidence that its eBooks do not include "code for invoking a highlighting service." As noted, eBooks are delivered to the Kobo App in ePub format. Hunter Decl. ¶ 7. An ePub file is a Zip archive that includes at least one document with content for the eBook and an OPF file which provides information such as identification of content, navigational information, and publication-level metadata. *Id.* An ePub file may also include scripts, such as a Javascript file. *Id.* Trevor Hunter, Kobo's Chief Technology Officer, states "[t]he eBooks provided through the Kobo Store include a legacy Javascript file (kobo.js) . . . , which contains functions relating to the page count of a book, pagination, the current progress in the book, font size and night reading," and that "[n]one of these functions relate to any highlighting capabilities of the Kobo App." *Id.* at ¶¶ 2, 36. Hunter states that "highlighting functionality is based entirely on code that is included in the Kobo App itself stored on a user's device," and "[t]he Kobo eBooks do not include any code for invoking a highlighting service." *Id.* at ¶¶ 9, 15.[5]

In opposition, Pop Top engages in distraction. It inaccurately characterizes Kobo's argument as requiring that "the served internet document . . . include *all* code necessary to highlight the served internet document." *Id.* at 9-10 (emphasis added). According to Pop Top,

---

[5] On the relevant page of Pop Top's infringement contentions, Pop Top identifies a "js" folder within an ePub-formatted book that contains Javascript code. Pop Top's Disclosures at 5. However, according to Kobo's unrebutted expert, Nathaniel Polish, Ph.D., "this Javascript file contains no functionality enabling a user to highlight a portion of a document," and Pop Top does not identify any such functionality in its infringement contentions. [*See* Docket No. 27-11 (Polish Decl., Nov. 12, 2020) ¶ 56.] Additionally, Hunter and Polish each performed "test cases" in which they removed the kobo.js file from two different eBooks and then loaded the modified eBooks onto the Kobo eReader, the Kobo App for iOS and Android, and the Kobo Desktop app for Mac and PCs. Despite stripping the kobo.js file from the eBooks, the eBooks and their highlighting features were still fully functional. Hunter Decl. ¶ 38; Polish Decl. ¶ 59. According to Kobo, this demonstrates that the kobo.js file does not contain "code for invoking a highlighting service to operate with the internet document." Pop Top does not offer any evidence to the contrary.

7

United States District Court
Northern District of California

"[t]he code included in the internet document . . . need only lead to the invocation of the highlighting service. The claim language makes express that the code is for invocation and not the code to do the highlighting[.]" *Id.* at 11.

Pop Top blatantly misconstrues Kobo's position. Kobo does not contend that the internet document must "include *all* code necessary to highlight" the document. Rather, Kobo asserts that the claim requires the internet document to "include[ ] code for invoking a highlighting service," and it presents evidence that the eBooks for the Kobo App do not include any such code. According to Kobo, the Kobo App's "highlighting functionality is based entirely on code that is included in the Kobo App itself," and not in the eBooks. *See* Hunter Decl. ¶ 9; Polish Decl. ¶¶ 58, 59. Importantly, Pop Top offers no evidence to dispute Kobo's evidence on this point; in fact, it offers no evidence whatsoever that the eBooks for the Kobo App include "code for invoking a highlighting service," despite being in possession of a complete eBook file. *See* Raskin Decl. ¶¶ 8-9.

Pop Top also includes a "claim chart" in its opposition brief that purportedly "maps" claim 1 to the statements in Hunter's declaration regarding the operation of the Kobo App. Opp'n 13-15. According to the chart, "[c]ode identifying the eBook as a Reflowable ePub file is 'code for invoking a highlighting service.'" *Id.* at 14. For starters, Pop Top's so-called "claim chart" is entirely unsupported by evidence. Moreover, Pop Top did not disclose this theory in its infringement contentions. The local rules of the Northern District of California require parties to define their theories of patent infringement (and invalidity) early on in the course of litigation, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed. Cir. 2006), and permit parties to amend their infringement contentions "only by order of the Court upon a timely showing of good cause." *See* Patent L.R. 3-6. "In contrast to the more liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the shifting sands approach to claim construction." *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. C. 11-2226-SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013) (citation omitted). The Patent Local Rules provide a non-exhaustive list of circumstances that support a finding of good cause, provided there is no prejudice to the non-moving party. These include "(a) claim

United States District Court
Northern District of California

8

construction by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material, prior art despite earlier diligent search; and (c) recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." Patent L.R. 3-6.

Pop Top makes no effort to demonstrate good cause to amend its infringement contentions to disclose the theory that "[c]ode identifying the eBook as a Reflowable ePub file is 'code for invoking a highlighting service.'" Pop Top was on notice of Kobo's position on non-infringement, including its position that the eBooks do not include code for invoking a highlighting service, well before it served its infringement contentions in October 2020. Raskin Decl. ¶¶ 3-9, 12, 14. Accordingly, there is no reason that Pop Top could not have disclosed this theory in its infringement contentions. It may not rely on the new theory now. In any event, Pop Top's new theory does not demonstrate that the Kobo App meets the limitation that "the internet document includes code for invoking a highlighting service to operate with the internet document." The "code for invoking a highlighting service" must be "include[ed]" in "the internet document." '623 Patent at 8:25-27. Pop Top does not identify any "code identifying the eBook as a Reflowable ePub file" that is contained within the eBooks for the Kobo App, and Kobo presents unrebutted evidence that the code that identifies the eBook as a Reflowable ePub file resides within the Kobo App itself. *See* Hunter Decl. ¶¶ 18-19 (under seal).

At the hearing, Pop Top offered yet another new theory of how the eBooks include "code for invoking a highlighting service," citing portions of Hunter's declaration that discuss Kobo's source code for the highlighting functionality, including certain commands to the content viewer. *See* Hunter Decl. ¶¶ 21-24. According to Pop Top, this series of commands to the content viewer is triggered by the user of the eBook. Pop Top pointed to paragraph 24, in which Hunter refers to a specific function that sends a "command to the content viewer in order to display the highlighting controls" and sets forth the corresponding source code. *See id*. at ¶ 24. According to Pop Top, Hunter "admits" in paragraph 24 that to display the highlighting controls, "a command is sent from the eBook to the content viewer." Therefore, Pop Top argues, "that is code for causing a user interface object for invoking a highlighter service" within the eBook. [Docket No. 49 (Hr'g

United States District Court
Northern District of California

9

Case 21-2174 Document 55 Page 206 Filed: 02/02/2022

Tr.) 7).]

Once again, the court cannot consider Pop Top's new argument because it does not appear in its infringement contentions. It doesn't even appear in Pop Top's opposition brief. At any rate, the argument has no merit. The relevant portion of paragraph 24 of the Hunter Declaration states that "[t]he showHighlightMenu() function sends a 'highlight?highlight' command to the content viewer in order to display the highlighting controls[.]" Contrary to Pop Top's assertion, the declaration does not state that the eBook itself contains source code that invokes the highlighting service by sending a command to the content viewer.

Other paragraphs in Hunter's declaration contradict Pop Top's reading of paragraph 24 as describing a command sent from the eBook to the content viewer that is "code for causing a user interface object for invoking a highlighter service" within the eBook. *See* Tr. 7. For example, Hunter states in paragraph 9 that the Kobo App's "highlighting functionality is based entirely on code that is included in the Kobo App itself stored on a user's device" and "[t]he Kobo eBooks do not include any code for invoking a highlighting service[.]" Hunter Decl. ¶¶ 9(a), 9(b). In a later paragraph introducing his discussion of the "source code for highlighting functionality," Hunter states, "when a user selects text to be highlighted and activates the Highlight button, the Kobo App is programmed to highlight the selected text." He continues: "[a]s I explain below with reference to the source code for the iOS version of the Kobo App, the Kobo App does this by executing functionality *that is located in the Kobo App itself*, which is stored on the user's local device." *Id*. at ¶ 15 (emphasis added). Hunter then describes the three categories of source code relevant to the highlighting functionality, including code that "[t]riggers the presentation of the highlighting controls." Each category of code resides within the Kobo App. *Id*. at ¶¶ 16, 20. Pop Top offers no evidence to contradict these portions of Hunter's declaration, and no evidence whatsoever to support its interpretation of paragraph 24.

The Federal Circuit instructs that "[a] party may not overcome a grant of summary judgment by merely offering conclusory statements." *TechSearch*, 286 F.3d at 1371 (quotation marks and citation omitted). "[G]eneral assertions of facts, general denials, and conclusory statements are insufficient to shoulder the non-movant's burden [on summary judgment]," and a

United States District Court
Northern District of California

10

party opposing summary judgment of non-infringement "must point to an evidentiary conflict created on the record, at least by a counter-statement of a fact set forth in detail in an affidavit by a knowledgeable affiant." *Id*. at 1372 (citations omitted). Here, Pop Top offers conclusory statements rather than facts to counter Kobo's evidence that eBooks do not "include[ ] code for invoking a highlighting service to operate with the internet document." Consequently, Pop Top has not satisfied its burden of demonstrating a dispute of fact on whether the Kobo App meets that particular limitation. Infringement must be shown literally or equivalently for each limitation. Pop Top's failure to establish a dispute of fact regarding Kobo's first identified limitation is fatal to its infringement claim. The court need not reach Kobo's arguments on the other three limitations. Kobo is entitled to summary judgment of non-infringement.

## IV.    CONCLUSION

For the foregoing reasons, Kobo's motion for summary judgment is granted. At the hearing, both parties acknowledged that a ruling in Kobo's favor would determine the entire case. Therefore, the Clerk shall close the case and judgment shall be entered in Kobo's favor.

**IT IS SO ORDERED.**

Dated: June 25, 2021



_____
Donna M. Ryu
United States Magistrate Judge

*United States District Court*
*Northern District of California*